[S. F. No. 4273. Department Two.—October 6, 1905.]

In the Matter of the Estate of BRIDGET McDERMOTT, Deceased. MARY ANNE BURNS, Appellant, v. JAMES MAGUIRE et al., Respondents.

WILLS — CONTEST OF PROBATE — FINDING AGAINST EXECUTION — SUFFICIENCY OF EVIDENCE.—*Held*, upon a review of the evidence that the finding of the trial court, upon the contest of the probate of an alleged will, that it was not executed by the deceased, is sufficiently supported.

ID.—PROVINCE OF TRIAL JUDGE—CREDIBILITY OF WITNESSES.—It is the province of the judge before whom the contest was tried to pass upon the credibility of witnesses; and if all the evidence, circumstances, facts, and probabilities in the case convince him that certain testimony in support of the will is not credible, it is his duty to disregard it.

ID.—ORDER OF PROOF—PRELIMINARY PROOF BY PROPONENT.—It was not error for the court, before hearing the contest, to require the proponent of the will to introduce preliminary proof of its execution. The proceeding on a petition for probate is distinct from the pro-

ceeding on a contest of the will, and the hearing of the statutory evidence on the petition for probate, which must be heard at some time, may as well be heard before as after the hearing of the contest.

APPEAL from a judgment of the Superior Court of San Mateo County, and from an order denying a new trial. George H. Buck, Judge.

The facts are stated in the opinion of the court.

William H. Chapman, for Appellant.

John J. Barrett, L. Seidenberg, George M. Davis, and Morrison & Cope, for Respondents.

McFARLAND, J.—Bridget McDermott died on the thirtieth day of December, 1902, in San Mateo, San Mateo County, California. Her heirs at law were brothers, sisters, nephews, and nieces. Search for a will was made for a couple of months after her death, and, none having been found, her brother, James Maguire, was in March, 1903, appointed administrator of her estate and qualified as such. Afterwards, on March 28, 1903, her niece, Mary Anne Burns, presented to the court and asked to have probated what purported to be a will of the deceased dated November 24, 1902, to which were attached the names of C. Michener and James Kerwin as subscribing witnesses. Contests were filed by a number of heirs at law upon several statutory grounds, but the only one to which evidence was introduced was that the instrument offered for probate had not been executed by the deceased and was not her will. A jury was waived, and the court found that the deceased did not execute the said instrument, finding that the instrument "was not subscribed by the said Bridget McDermott herself, nor was her name subscribed by any person in her presence or by her direction; that no subscription of said instrument was made by said Bridget McDermott, or by her direction in the presence of C. Michener and James Kerwin, or either of them, or in the presence of any other person; nor did said Bridget McDermott acknowledge to said C. Michener and James Kerwin, or either of them, or to any other person or persons, that the alleged subscription by her thereto had

been made by her authority; that said Bridget McDermott. deceased, did not on the 24th day of November, 1902, or at any other time, acknowledge or declare to C. Michener and James Kerwin, or to either of them, or to any other person or persons whatever, that said instrument was her last will and testament or her will''; and pursuant to this finding the court rendered judgment denying the probate of this alleged will. From this judgment, and from an order denying a motion for a new trial, Mary Anne Burns appeals.

The main question in the case is a question of fact; and the propositions attempted to be maintained by appellant are, that the evidence does not present any fair and reasonable grounds upon which the finding of the trial court that the alleged will was not executed by deceased can rest, that it is practically one-sided to the point that she did execute the asserted will, and that upon this issue it is without any substantial conflict. We do not think that these propositions are maintainable. The position of appellant seems to be that because the two subscribing witnesses testify that the will was executed, therefore the execution should have been taken as proved, unless there was testimony directly and expressly contradicting the testimony of said witnesses; but, of course, a trial judge is not bound to accept any particular testimony as true. It is his province to pass upon the credibility of witnesses, and if all the evidence, circumstances, facts, and probabilities in the case convince him that certain testimony is not credible, it is his duty to disregard it. There was a great deal of evidence taken, and we shall not undertake here to notice any considerable part of it. We shall refer only to a few of the main features of the case.

Bridget McDermott had lived continuously in San Mateo for a quarter of a century immediately preceding her death. She had property amounting in value to about one hundred thousand dollars, consisting of notes, mortgages, money, real estate, etc. She executed written instruments in the course of her business, which she always signed with her mark, a cross. In her important business affairs she usually consulted a friend living at San Mateo named D. C. Brown. The evidence tending to show the execution of the will is substantially this: The subscribing witness Kerwin testified that on the day of the date of the alleged will, which was November

24, 1902, he accidentally met the deceased in San Francisco. He thought the meeting was on Market Street and near the Chronicle Building, but was not sure about it. He said that the deceased approached him and asked him if he could recommend an honest lawyer who would draw some papers for her. He did not say that she recognized him as an acquaintance, but said that he had seen her two or three times, although he had no intimate acquaintance with her. He said that he took her to the office of C. Michener, a lawyer, and introduced her as Bridget McDermott. Michener testified that Kerwin came to his office with a woman whom he introduced as Bridget McDermott, and said that she wanted him to draw a paper for her; that she told him her name and said that she wanted him to draw her will, and that she wanted to leave five thousand dollars to one Fannon, and all the residue of her property to Mary Anne Burns, the present appellant. He said that she wanted the will executed immediately, and he thereupon prepared it. She requested him to subscribe her name to the will, which he did. He testified that he showed her where to make her mark, and that she made the mark as directed, so that the whole signature was Bridget X McDermott. He repeated in his testimony several times that she herself made the cross, but finally said that he might have made the mark at her request. There was expert testimony that a comparison of this mark with other marks which deceased had made in transacting business showed that it was not made by her, but that the whole writing "Bridget X McDermott" was written by the same person. Counsel for appellant admits that the mark was not made by the deceased, but asserts that it was made at her request. The witness testified that Kerwin and himself signed the instrument as subscribing witnesses at the request of the woman, and that she declared it to be her will, etc.

The testimony of Kerwin was in some respects quite remarkable. Although he made the general statement that he met the deceased on the street in San Francisco and was asked by her to take her to an honest lawyer to draw some papers for her, and that he took her to Michener, yet upon further examination he practically declared that he did not know anything on the subject. To a large number of questions he answered "I don't know." We copy here a few of these

questions and answers: "Q. What took place between you and Mrs. McDermott at this meeting?—A. I don't know.—Q. Was there any conversation between you at all?—A. I don't know.—Q. State all you can remember transpired between you and Mrs. McDermott before you entered Michener's office?—A. I don't know.—Q. Did or did she not say that she desired to have a paper drawn?—A. I don't know.— Q. When Mrs. McDermott met you on that day, did she ask you to accompany her or not to the office of Michener?— A. I don't know.—Q. Did you suggest to her, or not, that she go to Michener's office with you?—A. I don't know.— Q. Did you recommend Michener to her for the purpose of drawing this paper?—A. I don't know.—Q. Did you recommend Michener to Mrs. McDermott on that day?—A. I don't know.—Q. Did she request you to take her to any person?— A. I don't know.—Q. Can you remember any of the circumstances that led you to accompany her to Michener's office?— A. I don't know.—Q. You remember that you did go with her to Michener's office that day?—A. I don't know.—Q. What led you to go with her to Michener's?—A. I don't know.— Q. Did you walk directly from the Chronicle Building, or wherever you met Mrs. McDermott, to the office of Mr. Michener accompanied by Mrs. McDermott?—A. I don't know.— Q. You don't know whether you walked with Mrs. McDermott from the Chronicle Building to Michener's office?—A. I don't know.—Q. When you went up there with Mrs. McDermott. did you or did you not go into the office with her?—A. I don't know.—Q. What?—A. I don't know."

The history of the will after its alleged execution and the circumstances under which it is asserted to have been found are also somewhat remarkable. Michener testified that it was taken away on the day of its execution by the woman who executed it; and nothing more was ever heard of it until March, 1903. Although Kerwin and Burns were intimate acquaintances, the former never said anything to the latter about a will until March, 1903, when he informed him that a will had been made. The witness Mrs. Foy, who lived near the residence of the deceased, testified that she was in the house of the deceased shortly after her death, and that an hour or two after her death the appellant, Mrs. Burns, who was present, but who lived in San Francisco, took a number

of pieces of cloth from some bureau drawers and put them into a basket, saying that she could use them in making clothing for her child, and asked Mrs. Foy to take them to Mrs. Foy's house and keep them until she called for them. This Mrs. Foy did, putting the basket in a closet in the second story of her house. The cloths were never called for until May 13, 1903, several months after she had taken them to her house. On this last-named day John Burns, husband of the appellant, together with a man named Donnelly, appeared at the house of Mrs. Foy, and Burns said that he had come to get those cloths. He had with him an empty basket. He said that when about to leave San Francisco, where he lived, to go to San Mateo, he accidentally met Donnelly, with whom he was well acquainted, and asked him to accompany him. Mrs. Foy got the basket and in the presence of Burns and Donnelly commenced to take the cloths piece by piece from the basket in which they had been put by Mrs. Burns, and place them in the basket brought by Burns. After she had thus removed about half the pieces of cloth, when she turned from Burns's basket to the other, she discovered lying on the top of the next piece of cloth, but not wrapped in anything, a paper, and said, "What is this? Maybe it is a will," and Burns immediately said, "That is what it is." The paper was then read and it turned out to be the instrument afterwards sought to be probated as the will of Bridget McDermott. Burns took the paper away with him, but did not take away the cloths, leaving his own basket at Mrs. Foy's house.

There was considerable more evidence in the case, but the foregoing is sufficient for the purpose of this opinion, and to show that there is no foundation for here disturbing the finding of the trial court that the alleged will was not executed by Bridget McDermott. The trial judge had the right to consider much of the testimony of the witnesses for appellant as highly improbable. He may have entirely disbelieved the testimony of the witness Kerwin; and this court certainly cannot say that he ought to have believed it. And without the testimony of Kerwin there is no evidence that Bridget McDermott of San Mateo was in San Francisco on November 24, 1902, and there executed a will. The lawyer who drew the will did not know her, and had no knowledge

that the woman who he says appeared before him on that occasion was Bridget McDermott except from information given him by Kerwin. The latter may have imposed upon him another woman who falsely impersonated the deceased, but that is a matter not necessary to be determined. It may be remarked that it was considerably improbable that the deceased, in so important a matter as the making of her will, should have gone away from her home where her friends and advisers were, and intrusted the matter to persons, one of whom was an entire stranger and the other only a casual acquaintance, if indeed she knew him at all. Again, the court may have disbelieved the story of the finding of the alleged will, and may have believed, as argued by counsel for respondents, that it was put among the cloths in the basket, not by the deceased nor at her direction, but by or at the instigation of Burns, who went to get the cloths, knowing that the will was to be there found, and arranged that Mrs. Foy, an uninterested person, should find the document; and if the trial judge so believed, there is no warrant for us to say that he should have had a different belief on the subject. Looking at the whole case, we see no reason that would justify us in disturbing the finding that the alleged will was not executed by the deceased.

It is contended that the judgment should be reversed because the court, over the objection of appellant, before proceeding with the contest, required appellant to introduce her preliminary proof on her petition for the probate of the will. This contention is not maintainable. The proceeding on a petition for probate is distinct from the proceeding on a contest of a will. The hearing of the necessary statutory evidence on the petition for probate must be heard by the court at some time, and this can properly be done as well before as after the hearing of the contest. There is in the case at bar no question of the burden of proof on the contest such as was agitated in *Estate of Latour,* 140 Cal. 414 [73 Pac. 1070, 74 Pac. 441].

There are a large number of exceptions to rulings of the court as to the admissibility of evidence, and it would take a great amount of space to notice them especially. This we do not deem it necessary to do; for, in our opinion, these rulings do not involve matters of sufficient consequence to
CXLVIII Cal.—4

warrant a reversal, even if some of them could be held to be in a strict sense erroneous.

The judgment and order appealed from are affirmed.

Lorigan, J., and Henshaw, J., concurred.