same time as those of the referee, which, it was then expected, would ultimately be included in the disbursements of the motion. That the parties did not consider these fees a part of the referee's fees is emphasized by the fact that after the reference was terminated, and the matter was again presented to the court, they assumed control of the stenographer's record, and by written stipulation, among other things, provided:

"*That the evidence heretofore taken herein* by the referee may be submitted to Hon. Samuel Nelson Sawyer, the justice before whom the matter is returnable at Lyons, and the original question at issue as to whether or not the service was made upon said defendant, as alleged in the affidavit of service attached to said judgment roll, may be decided by him, the same as if no reference had been ordered herein."

By this stipulation the parties adopted and ratified that originally made, so far as it relates to the stenographer's fees, and availed themselves of the evidence taken by him by submitting it to the court as the basis for its disposition of the case. Both by its phraseology and by the acts of the parties in relation to the stenographer, it is evident that their agreement intended his fees should be taxed as a disbursement entirely independent of those of the referee, and it follows that recovery of the cost thereof is not defeated by the provisions of section 1019, which deprives the referee of his fees.

In accordance with the foregoing, this order should be resettled, so as to eliminate the referee's fees of $100, and provide that it be granted, with $10 costs, and the amount disbursed for stenographer's fees to be taxed. Order may be entered accordingly, without costs.

Ordered accordingly.

---

(80 Misc. Rep. 295.)

### PARKER v. OSWEGO CONST. CO.

(Supreme Court, Special Term, Onondaga County. April, 1913.)

1. NEGLIGENCE (§ 2*)—ACTIONABLE NEGLIGENCE—ESSENTIALS.
   There can be no actionable negligence, unless it is occasioned by a violation of some duty owing to the injured person.
   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 3, 4; Dec. Dig. § 2.*]

2. NEGLIGENCE (§ 1*)—"AFFIRMATIVE NEGLIGENCE."
   The definition of the phrase "affirmative negligence," as used in the rule that every one must refrain from affirmative negligence in the management of his property or business, where such negligence is likely to subject others to dangers, varies with the relation of the parties and the duty one owes to another; and where one is the owner of the property, and the other a licensee or trespasser, the meaning is restricted.
   [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. BRIDGES (§ 35*)—PERSONAL INJURIES—AFFIRMATIVE NEGLIGENCE—LIABILITY OF CONTRACTOR.
   Where a contractor, in making excavations, cut off the end of a state bridge without the owner's consent or approval, and arranged supports for the remainder in a negligent manner, as the result of which it fell, and injured plaintiff, who was standing on the bridge, where he had a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

right to be, watching the contractor's operations, the contractor was guilty of affirmative negligence, and was liable.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 80, 96, 98, 109; Dec. Dig. § 35.*]

Action by Linus J. Parker against the Oswego Construction Company. Demurrer to complaint overruled.

Olmsted, Van Bergen & Searl, of Syracuse, for plaintiff.
Bond & Schoeneck, of Syracuse, for defendant.

ANDREWS, J. The complaint shows that there existed a bridge extending westerly from a public highway in the city of Fulton across the Oswego Canal and then across an arm of the Oswego river to an island in the said river. This island was occupied by the Fulton Light, Heat & Power Company. The bridge in question was the property of the state of New York, and had been for over 30 years used by the public.

The defendant was engaged in making excavations for the Barge Canal between the bed of the Oswego river and the Oswego Canal at Fulton. In the performance of this work it, without the right so to do, cut off the westerly end of the bridge, and attempted to support the remainder by certain trusses, but did it in so negligent and improper a manner that what remained of the bridge was dangerous and unsafe, and liable to fall of its own weight at any time. Thereafter it permitted and allowed a large number of persons, including the plaintiff, to use the said bridge daily as a point of observation, and many persons congregated upon it each day for the purpose of observing its operations.

While the plaintiff was on the bridge for this purpose on August 8, 1912, and himself in the exercise of due care, the bridge fell, and he was injured. It is claimed that the facts stated fail to show the existence of a cause of action in favor of the plaintiff.

[1] There is no injury, in the legal sense, which can give a right of action, unless it is occasioned by a violation of some duty owing to the injured. But it may be stated as a general rule that every one must refrain from affirmative negligence in the management of his property or business, where such negligence is likely to subject others to danger.

[2] The definition to be given to the phrase "affirmative negligence" varies, however, with the relation of the parties and the duty one owes to the other. Where the one, for instance, is the owner of property, and the other a trespasser or a licensee, the meaning is restricted. In Nicholson v. Erie R. Co., 41 N. Y. 525–538, Judge Earl cites with approval a Massachusetts case where the plaintiff, a licensee, was injured while passing over the defendant's property by a keg thrown out of the window by one of the defendant's servants, and a recovery was had. But, he says, that no recovery would have been possible, had the keg been carelessly placed on the roof and then blown down upon the plaintiff. In Fox v. Warner-Quinlan Asphalt Co., 204 N. Y. 240, 97 N. E. 497, 38 L. R. A. (N. S.) 395, the plain-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff fell into an excavation which had been continued by the defendant on its own land across a pathway continuously used by licensees, and it was held that there could be no recovery.

There can be no doubt, however, that if a keg negligently placed upon a roof falls and injures a person passing in a public highway, or if the excavation, in the Fox Case, had been continued across such a highway, the person responsible for such an act would have been held guilty of affirmative negligence. It is equally clear that in either case, had the person injured been the owner of a right of way over the defendant's property, and had he been injured while lawfully passing over the same, a recovery would have been permitted.

The rule with regard to the owners of property and trespassers and licensees is based upon the theory that owners should have reasonable freedom of the use of their own land in their own way, and that in making such use of it they should not be embarrassed by others having no claim or title thereto. It is therefore at least doubtful whether, had the bridge in question been interfered with by the state, it being the state's property, and the plaintiff being a licensee, there could be any recovery; and the various cases cited by the defendant in support of its demurrer all bear upon this question.

[3] The defendant in this case, however, does not stand in that relation to the plaintiff or to the property where the injury is alleged to have occurred. So far as it is concerned the plaintiff had a right to be upon the bridge in question. As to it he was neither a trespasser nor a licensee. He was there with the consent and approval of the owner of the property. The defendant knew that he was likely to be upon the bridge, and that weakening it was likely to cause him injury. The defendant was not acting for the owner, or with its consent and approval. It cannot claim, therefore, that it comes within the rule defining acts of affirmative negligence as between the owner and the licensee or trespasser. It is in the position of one who negligently performs an act likely, in the ordinary course of events, to injure another; that other being where, so far as the defendant is concerned, he had a perfect right to be. Such an act, under such circumstances, is affirmative negligence. Commonwealth Co. v. Melville, 210 Ill. 70, 70 N. E. 1052.

I have found no case in point on this subject, but Murphy v. City of Brooklyn, 118 N. Y. 575, 23 N. E. 887, was an action brought to recover damages for injury received by a licensee through falling into a hole near the pathway which he was following over another's land. This hole was constructed by a third party. Judge Parker, in his statement of facts, says that it does not appear that it was not constructed with the consent of the owner, and further on argues that the owner himself would not have been liable under the circumstances, and that he could permit another to do what he might do himself; assuming, apparently, that if the owner had not consented there might have been liability.

The demurrer herein is overruled upon the usual terms.

Demurrer overruled.