[Civ. No. 6236. Second Appellate District, Division Two.—November 15, 1928.]

In the Matter of the Estate of GRACE L. NOVOTNY, Deceased. CHARLES LANTZ, Appellant; GUSTAVE NOVOTNY et al., Respondents.

Hibbard & Kleindienst for Respondents.

Winslow P. Hyatt for Appellant.

THOMPSON (IRA F.), J.—This is an appeal by proponent from a judgment denying probate to the instrument offered as the last will and testament of Grace L. Novotny, deceased. Before probate, a contest was filed by the surviving husband on his own behalf and as guardian *ad litem* of his minor daughter Jean Ann Novotny. The contest was tried before a jury and resulted in a disagreement. The court then set the hearing of the formal proof of the will before himself and as a matter of grace permitted counsel for the contestants to cross-examine the witnesses. Frances Avery, one of the subscribing witnesses, called by the court, testified in substance that she had known Mrs. Novotny for about three and one-half years before her death and in the capacity of a practical nurse had helped to take care of the deceased as well as her infant child Jean; that about three days before the execution of the will Mrs. Novotny's mother visited her daughter and raised "Ned in general" because her daughter was married to Mr. Novotny and "wanted her to leave him" because "all he married her for was what she had" and "told her daughter that she had no business to get married until she was dead"; that on the following day at the request of Mrs. Novotny she called Mr. Lantz, an attorney, and the proponent of the will, who came and talked with the deceased alone for about an hour. Two days later and on August 2d, Mr. Lantz returned and asked Mrs. Avery to leave the room and during her absence therefrom and while caring for the' child Mr. Lantz called her back; that when she returned to the room proponent was holding a white paper in his hand which he asked her if she would sign. When she answered in the affirmative he asked Mrs. Novotny if she wanted the witness to sign and Mrs. Novotny said, "Why, will you?" to which she also replied in the affirmative. The witness further testified that proponent then inquired who would be the other witness and answered his own question by suggesting his son, who was waiting in an automobile outside. While Mrs. Avery was getting pen and ink Mr. Lantz called his son. As soon as the son came in Mrs. Avery signed the paper and immediately left the room. She fur-

ther testified that she did not see the other witness, Mr.
Lantz's son sign, nor did she see Mrs. Novotny sign, nor did
Mrs. Novotny say she had signed or that the instrument was
her will; that all she saw at the time was one sheet of
paper without a cover, whereas it appears that the instru-
ment proposed consisted of three pages and cover. She
also says that when Mr. Lantz placed the sheet of paper
before her for her signature that he folded it and that she
did not even read the attestation clause. In this connection
the stenographer of proponent testified that she typewrote
the will for her employer and handed the pieces of paper to
him without fastening them together. There was also testi-
mony substantiating what appears from the face of the
signature itself, to wit, that a line drawn under the signature
of Grace L. Novotny was drawn after the signature was
appended. On cross-examination by counsel for proponent
Mrs. Avery was questioned as follows:

"Q. Now, do you remember Mr. Lantz asking the ques-
tion of Mrs. Novotny what that was when he handed her
that paper? A. Yes sir.

"Q. And what did she say? A. He says, 'Do you remem-
ber what you got in your hands or what you are signing?'
And then she asked him, and he says, 'Why, it is your will.'

"Q. Let me get that wording, just that answer again,
please."

(The reporter read the answer.)

"Q. Isn't it a fact that Mr. Lantz asked Mrs. Novotny at
that time the question 'What is this?' and is it not a fact
that Mrs. Novotny said 'That is my will?'"

(No response.)

"Did you understand the question? A. Read the ques-
tion over again, please."

(The reporter read the question.)

"A. He asked her if she knew what she was signing or
what this paper was, and she hesitated, she didn't know, and
he says, 'Isn't it a fact you are signing your will?'

"Q. And what did she say to that? A. 'Oh.'

"Q. What is that? A. 'Oh.'

"Q. She just said 'oh,' and then after that she asked
you to write—to sign your name to it? A. No, not after
that. She asked me before that."

The other subscribing witness, C. Chapman Lantz, testified that the will was signed by Mrs. Novotny and declared to be her last will in the presence of himself and Mrs. Avery and that they signed in the presence of each other.

In general the will devised all of the property to Charles Lantz, but, nevertheless, in trust for the purpose of paying the income to Mrs. Novotny's mother during her lifetime or in the event that her husband died before she did without adequate provision for their daughter, for the purpose of distributing the income to the daughter and mother in a proportion to be determined by the trustee. The will also provided for the determination of the trust and the distribution of the funds to the daughter Jean Ann Novotny, after the death of her grandmother and upon attaining her majority. The husband was left nothing. Charles Lantz was also nominated guardian of the estate of the daughter, in the event one became necessary, and in the event of the resignation, death, or disability of Charles Lantz, T. A. Box, Jr., shown by the testimony to be proponent's son-in-law, was to act as trustee and also as executor in the place of Mr. Lantz, under the same circumstances. Mr. Lantz's testimony shows that he recommended his son-in-law to Mrs. Novotny for the appointment and wrote his name into the will with pen and ink in blank spaces provided therefor.

In this situation appellant urges three reasons as grounds for reversal, first, that the formal proof of the will was complete and all statutory requirements complied with; second, that the court erred in permitting the guardian *ad litem* of the minor daughter to participate in opposing the probate of the will, and, third, that the court erred in refusing to permit proponent to introduce certain additional testimony.

In support of his first contention the appellant asserts that even though Mrs. Avery had stepped into the kitchen, i. e., into another room of the apartment at the time Mrs. Novotny signed the will, she was nevertheless in the presence of the testatrix and "of the other witness to the will." He also argues that when from some cause or another a subscribing witness to a will testifies contrary to the solemn act of attestation, the testimony should be

weighed with grave suspicion. While it is true that there was no door between the bedroom in which it is said Mrs. Novotny signed the instrument, and the kitchen, yet the wall between the two, according to the plat which was introduced, practically covered the head of the bed. Mrs. Avery was positive in her assertion that she was not present when Mrs. Novotny signed the instrument and also that she did not acknowledge it to be her signature. It is undoubtedly the function of the probate judge to weigh the testimony and all of the circumstances attending the execution of the purported will for the purpose of deciding whether Mrs. Avery was present when the instrument was signed by the deceased, or whether the deceased acknowledged it to be her signature. That court, having determined upon sufficient testimony, that she was not present, it certainly cannot be said that as a matter of law we can declare the contrary. It may well be true that under some circumstances the probate judge should view with suspicion the testimony of a subscribing witness who denies the solemn act of attestation, yet it must not only be borne in mind that the witness here says she had no opportunity to read the attestation clause or see the instrument which she was witnessing, but also that the attorney who was in charge of the formalities of execution and into whose keeping the will was entrusted and whose son was called by his own suggestion, was to profit by the terms of the will. While he was not a beneficiary or legatee for his own use, nevertheless the fees to be paid him for acting as executor, also as trustee and perhaps as guardian of an estate shown by the testimony to approximate $20,000, may have been properly considered by the court in relation to other circumstances as tending to throw doubt upon the testimony of proponent and his son, C. Chapman Lantz. Courts go so far as to say that where there is the confidential relationship of attorney and client between the testatrix and a beneficiary, coupled with activity of the latter in the preparation of a will, a presumption of undue influence arises. (*Estate of Witt,* 198 Cal. 407, 420 [245 Pac. 197].) With this rule in mind it is obvious that the probate judge was fully justified in viewing with caution testimony of the attorney and his son. We find nothing inconsistent with this view in either the *Estate of Tyler,* 121

Cal. 405 [53 Pac. 928], or *Estate of Dow*, 181 Cal. 106 [183 Pac. 794], relied upon by appellant. In both of the authorities cited the trial court held the will to have been executed with proper formalities. In the Tyler case the only subscribing witness alive had forgotten the details attending the execution, and it was held that a presumption of due execution arose upon proof of the signatures of the testator and witnesses. In the Dow case the court, after pointing out that the will was actually signed in the bodily presence of the testatrix says "The most that can be said in favor of the appellant on the question as to whether or not the subscribing witness Kinsman, signed the will when the testatrix was asleep is that the evidence is so conflicting that the finding of the trial court upon the question is conclusive on this court." So here, the finding of the court cannot be disturbed.

■ The next attack of appellant upon the judgment is conclusively repulsed by the authority of the *Estate of Relphs*, 192 Cal. 451 [221 Pac. 361]. To use the language of the appellant the point made is: "The court erred in permitting the guardian of the infant Jean Ann Novotny to participate in opposing the probate of the will of her mother, the guardian having a personal interest, adverse to his ward." In the case mentioned the supreme court says: "When a will is contested before probate there are two separate and distinct proceedings pending before the court. One is the petition for the probate of the will; the other is the contest of the probate of the will. (*Estate of Latour*, 140 Cal. 414 [73 Pac. 1070, 74 Pac. 441]; *Estate of McDermott*, 148 Cal. 43, 49 [82 Pac. 842]; *Estate of Cullberg*, 169 Cal. 365 [146 Pac. 888].) The petition for the probate of a will is distinctly a proceeding *in rem*. (*Estate of Baker*, 170 Cal. 578, 585 [150 Pac. 989]; *Estate of Allen*, 176 Cal. 632 [169 Pac. 364].) The petitioner or proponent appears therein as plaintiff and tenders to all of the world all of the issues of fact relevant to the ultimate question of the validity of the will. While all persons interested in the estate are in a sense parties defendant thereto, there are no defendants in the sense of active parties litigant in this proceeding. It is in a sense an *ex parte* proceeding, in which the burden rests upon the petitioner to prove all the material allegations of

his petition, whether denied or not, and the responsibility is upon the court to guard and protect the interests of all persons interested therein. . . . In the proceeding for the probate of the will, as distinguished from the proceedings upon the contest, the evidence and the issues of fact are solely for the consideration and determination of the court, even though a jury may have been demanded and impaneled for the trial of the issues upon the contest. (*Estate of Latour, supra; Estate of McDermott, supra.*) The contestants are not parties to this proceeding and have no right to appear therein (*Estate of Latour, supra*), but the trial court, having itself the right to cross-examine the witnesses produced therein, may, in the exercise of its discretion, permit counsel for contestants so to do. (*Estate of Cullberg, supra.*) But when such permission is granted it is as a matter of grace and not in recognition of a right possessed by contestants.'' It could not possibly have affected the rights of appellant whether the counsel to whom the grace was extended represented the surviving husband alone or the husband in his individual capacity and as guardian *ad litem* of his minor daughter.

■ Appellant also assigns the refusal of the court to admit certain testimony as a reason for reversal. The first instance complained of consists of an offer upon the part of the appellant to produce a witness who would testify that Mrs. Avery had ''told her that Mr. Lantz had been there and that Grace had made her will,'' to which the court replied, ''It may be stipulated that Mrs. Peterson would so testify if she were here, because I heard what she said in the other case'' [the contest] ''and it would not affect my decision in the matter in the slightest.'' A recital of the circumstances is sufficient to demonstrate that appellant has nothing of which to complain.

■ Counsel next offered testimony to show that Mrs. Novotny in conversation with friends had expressed the purpose of making a will to protect her mother during the latter's lifetime. Counsel has not pointed out to us in what manner the proffered testimony would have borne upon the question of the due execution of the will, and we can perceive no way in which it could have been enlightening to the court below. Nor are we able to find any merit in the

complaint of appellant that the court refused to hear proof that there could be no unreasonable compensation paid to Mr. Lantz for his services as trustee, for the reason that the amount of compensation would be determined by order of court.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 11, 1928, and the following opinion then rendered thereon:

THOMPSON (IRA F.), J.— In his petition for a rehearing in this matter the appellant argues that the court below assumed to decide matters that proponent was entitled to have determined by a jury. He asserts that when the proponent has introduced sufficient testimony upon the question of the execution of a will with due formality to establish a *prima facie* case the probate judge must submit the question of the due execution of the will to the jury. It would constitute a sufficient answer to appellant's contention to say that the point raised by him is now suggested for the first time. Not a word is said concerning the question in the briefs upon which the cause was submitted. ''It has been repeatedly held that where a case has been decided, a rehearing will not be granted for the purpose of considering a suggestion of error made for the first time in the petition therefor,'' says 2 California Jurisprudence, at page 786. A number of authorities are cited to the point, from which we select only two: *Prince* v. *Hill,* 170 Cal. 192 [149 Pac. 578], and *Estabrook Co.* v. *Industrial Acc. Com.,* 177 Cal. 767 [177 Pac. 848]. In the latter of these precedents it is said: ''It is the settled rule of this court that points made for the first time on petition for rehearing will not be considered.''

 In addition to this rule, however, and if we were to pass upon the point, we should be obliged to call attention to the fact that it was appellant who objected during the contest to submitting the question of execution of the will with the formalities required by law, to the jury. Upon the call of the contest, counsel for contestants asked leave to

amend his pleading by denying the due execution of the will, asserting as his reason that he desired that issue to go to the jury. To this proposal the proponent and appellant interposed vigorous objections, on the ground that the due execution had not been made one of the grounds of contest, and insisted upon a continuance for further preparation if the court should permit the amendment. Finally, when it appeared that the court was about to grant proponent a continuance if he permitted the amendment, counsel for contestants decided to waive their request and the argument was terminated as follows:

The court: "Now just one minute. It is understood that when we close the evidence on the contest that then the court will take up the matter of the proof as to the probate."

Counsel for proponent: "That will be very satisfactory, and that is what we expected."

Under this state of facts appellant may not be heard to complain that the question was not submitted to the jury.

Petition for rehearing denied.

Works, P. J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 14, 1929.

All the Justices concurred.