DAVID B. SILVERMAN *vs.* CHARLES W. USEN.

York.    Opinion October 9, 1929.

350

*Emery & Waterhouse,* for plaintiff.
*F. R. & M. Chesley,*
*Strout & Strout,* for defendant.

SITTING: DUNN, DEASY, STURGIS, BASSETT, FARRINGTON, JJ.

DEASY, J.   In July, 1925, the defendant was the owner of a tract of land bordering upon a public street in Old Orchard.

Upon a part of it was a building equipped as a shooting gallery. It was so planned and arranged that a person using it stood very near or upon the public sidewalk and shot across a gun table at a target about thirty feet distant within the building.

The defendant leased the gallery thus equipped to one Charles Garmanack who operated the shooting gallery.

The plaintiff wishing to see Mr. Garmanack, the lessee, went to the premises. Not finding Garmanack at once he waited and while waiting, walked along the sidewalk in front of the gallery. Attracted by it he paused to watch the shooting. A projectile was deflected by the target or by the steel wall beyond it and rebounded, striking the plaintiff in the eye, destroying one eye and threatening the loss of both.

Upon defendant's motion a nonsuit was entered. The defendant's brief stresses the doctrine of liability to an invitee, contrasting it with liability to a mere licensee. But the plaintiff was neither the one nor the other. At the time of the injury he was upon the sidewalk, a part of the public street, not by virtue of any invitation from any person, but in the exercise of his right as a traveler.

The defendant contends that the plaintiff had forfeited his rights as a traveler by loitering upon the sidewalk to watch the shooting. Not so.

"No person has a right to permanently use (the streets) for private purposes." 13 R. C. L., 252.

This rule may well apply to the defendant who so planned and equipped his shooting gallery that the sidewalk was used as a platform by those engaged in target practise.

It does not apply to the plaintiff who paused temporarily upon the sidewalk to look at the shooting gallery and observe its use.

Streets, including sidewalks, are for use in traveling, but a traveler is not obliged to keep "moving on" like poor Joe in "Bleak House."

"In order to be a traveler it is not necessary that one should be constantly moving on." *Commonwealth* v. *Henry*, 229 Mass., 22.

"During these stops of reasonable duration one should not lose his rights as a traveler and the protection thus afforded to his person or property." *Smethurst* v. *Church*, 148 Mass., 266; See *Britton* v. *Cummington*, 107 Mass., 347; *Leighton* v. *Dean*, 117 Me., 40.

The plaintiff testified that he waited for Mr. Garmanack's return for "an hour or something like that." Not, however, that he stood upon the sidewalk while waiting. In answer to another question he testified that he remained "there before anything happened" — "fifteen or twenty minutes."

In the absence of testimony that he was impeding public travel such a stop can not, as a matter of law, be said to have changed his status from that of a traveler to that of a trespasser or nuisance.

But he did not mean (thus the context plainly indicates) that he stood in one place upon the sidewalk even that length of time.

It can not properly be said as a matter of law that the plaintiff had lost his rights as a traveler.

If there were no other ground for it, the ruling granting a non-suit would have been erroneous.

But the defendant advances another reason for sustaining the nonsuit.

The action is brought not against the lessee who was in sole possession, maintaining and operating the shooting gallery, but against its owner.

When a leased structure is at the time of the letting defective and dangerous by reason of faulty construction or want of repair, the lessor may be liable to a third party suffering injury thereby. 16 R. C. L., 1076.

Likewise a landlord who leases premises for a purpose which is *per se* a nuisance may be held liable to a third person injured by it. "To charge the landlord the nuisance must necessarily result from the ordinary use of the premises by the tenant for the purpose for which they were let." 2nd Wood on Landlord and Tenant, Sec. 536; *Kennedy* v. *Garrard* (Tex.), 156 S. W., 570.

A shooting gallery is not *per se* a nuisance. It is not a nuisance if licensed by competent public authority under R. S., Chap. 32.

"The legislative sanction makes the business lawful and defines what must be accepted as a reasonable use of property." *Sawyer* v. *Davis*, 136 Mass., 242.

Though licensed it may be dangerous, but it is not a tort to lease property for a use which a licensing board created by the Legislature has, even though injudiciously, licensed as legitimate.

In *Leonard* v. *Hornellsville et al*, 58 N. Y. S., 266, the headnote fairly summarizing the opinion says: "The owner of premises in a city who leased them for a shooting gallery which the tenant conducted in a manner prohibited by the City Charter, thereby injuring a person while on the street adjacent to the premises is not liable for the injuries in the absence of proof that she (the owner) knew that the tenant was using the premises in violation of the charter."

In another shooting gallery case wherein the lessor was held to be responsible the Court says: "The theory upon which the landlord is held to be liable where the premises are leased with a nuisance is that he created the nuisance and will be presumed to have intended the continuance thereof." *Larson* v. *Park Company* (Utah), 180 Pac., 599; 4 A. L. R., 731.

But when the property is leased to be used as a shooting gallery under proper public license it can not be properly said that the nuisance is intended.

Even if a shooting gallery be duly licensed the lessee or person operating it is responsible for injuries caused by his negligence. But it is elementary that a lessor as such is not liable for the negligence of his lessee.

It is true that the course of the projectile which destroyed the plaintiff's eye was not affected by license or want of it. But as in all actions of tort, the burden is upon the plaintiff to show some breach of legal duty owed him by the defendant. It is not shown and can not be assumed that the defendant leased the premises to be run without public license and therefore illegally. 16 C. J., 241.

No breach of the defendant's legal duty is proved.

*Exceptions overruled.*