[Civ. No. 8120.  Second Appellate District, Division Two.—September 21, 1932.]

In the Matter of the Estate of ANNA EDWARDS, Deceased.  RICHMOND A.  EDWARDS, Appellant,  v.  MARGARET E. AGNEW et al., Respondents.

Glensor, Clewe, Schofield & Van Dine and Glensor, Clewe & Van Dine for Appellant.

Harry W. T. Ross and Griffith & Thornburgh for Respondents.

STEPHENS, J., *pro tem.*—This is an appeal by Richmond A. Edwards, a nephew of decedent and a legatee under her will, and from a final decree of distribution and from an order of the probate court denying his petition for a distribution of certain portions of the estate in accordance with his contention that certain trust provisions of the will are invalid.

Appellant is entitled to a one-twelfth share in any estate with respect to which the decedent died testate. The will provided for certain gifts which we need not consider. We shall quote such parts of the document as is necessary to a full understanding of the controversy: "Seventh: I give and bequeath to Security First National Bank of Los Angeles, a corporation, the sum of sixty thousand (60,000) dollars in trust nevertheless for the following uses and purposes: To collect, hold, manage, invest and reinvest the same, and to pay the net income therefrom as follows." (Here follows bequests of the net income from $10,000 each to Elizabeth R. Jones, a niece, and to John B. Edwards, Richmond Edwards, Alfred R. Edwards, William A. Edwards and Carl Edwards, nephews.) "As each of my said nieces and nephews die, then the share of the principal of the trust fund of the one so dying in the trust fund created by this paragraph of my will shall be added to the residuum of my estate and be disposed of as provided in paragraph 8 of this my will. Eighth: All the rest, residue and remainder of my property, real, personal and mixed, and wheresoever the same may be situate or being, I give, devise

and bequeath to Security-First National Bank of Los Angeles, a corporation, in trust nevertheless for the following uses and purposes: To collect, hold, manage, sell, lease, control and possess, invest and reinvest the same, and pay the net income therefrom to the following persons and in proportions as follows: To pay the sum of twenty-five (25) dollars per month to Miss Lolita Krug, or to the superintendent of such sanitarium or other institution as the said Lolita Krug may be confined in, for her benefit for and during the life of said Lolita Krug and upon her death such payments shall cease. The balance of said net income (and upon the death of said Lolita Krug, all of said income) shall be paid as follows''—one-seventh thereof to each of decedent's nieces and grandnieces, namely, Abby Edwards Randall, Dorothy Edwards, Margaret E. Agnew, Miriam B. Edwards, Patricia A. Ryon and Anna Bermingham Edwards. ''Should either of my said nieces or grand-nieces die leaving lawful issue her surviving, then the share of the income of the one so dying shall go to such issue; however, should either of my said nieces or grand-nieces die leaving no lawful issue her surviving, then the share of the income of the one so dying shall go to the survivor or survivors of my said nieces and grand-nieces. *Upon the death of the last of my four nieces in this Paragraph 8 above named, this trust shall cease and terminate, provided my said grandnieces shall have attained the age of fifty years (or shall have died)* and the property so held in trust by my said trustee shall go to and vest *per stirpes* in my said grandnieces and in the lawful issue of my said four nieces and in the lawful issue of any of my grand-nieces who may have died prior to the termination of this trust; and should all of my said nieces and grand-nieces die without lawful issue her or them surviving, then the property so held in trust shall go to and vest in my said nephews, Archie M. Edwards and John S. Edwards, or should they die prior to the termination of this trust, to their lawful issue, *per stirpes,* or as they, my said nephews, may by will designate.'' (Italics ours.)

Appellant claims that the part of the will italicized for convenience and reading: ''Upon the death of the last of my four nieces in this Paragraph 8 above named, this trust shall cease and terminate, provided my said grand-nieces

shall have attained the age of fifty years (or shall have died)'' leaves the distribution of the property placed in trust under this paragraph subject to a condition that may never happen; that upon the death of the nieces the events mentioned in the proviso may not have occurred and for that reason is ineffective. If ineffective, then the trust sought to be created by paragraph 8 of the will is itself ineffective and invalid as violative of article XX, section 9, of the Constitution and section 715 of the Civil Code. The constitutional provision refers to the rule against perpetuities and the code provision to the rule against the suspension of alienation.

The case presents only a controversy over the construction of language.

It is apparent to us that decedent intended to dispose of all of her property by this will. It is also apparent that her primary intention in paragraph 8 was to provide an income for her nieces during their lifetime and for the younger generation, to wit, the daughters of her nieces, up to the ripe period of fifty years. After this had been accomplished she no longer sought to limit the use of her estate except to provide that it should be distributed to the heirs of those specifically mentioned in said paragraph. No other intention can be deducted from a careful reading of the whole questioned paragraph. ■ Of course, while a will should be read so as to arrive at the intention of the maker, such intention must be fairly found from the wording of the will itself and courts cannot generally supply needed words or expressions nor dismiss from consideration words or expressions in order to arrive at the maker's intention. ■ Then, too, construction of the English language is too inaccurate to arrive at the meaning of any phrase by a strict adherence to the dictionary definition of its component words or by isolating it from its context. On the other hand no strained meaning can be attributed to any word or phrase used. Wills should be construed to validate them rather than to invalidate them.

With these general principles in mind, and no authority seems necessary to support them, let us examine the paragraph and see whether or not the evident intention of the maker is within a reasonable interpretation of the language used. ■ If we must conclude that the provision for

terminating the trust is limited to the moment of death of the last surviving niece then unquestionably the provision that the grandnieces shall either be dead or have then arrived at fifty years of age injects a condition precedent that may never be realized. But we think such a construction is contrary to the evident plan and, of course, acts to invalidate the whole paragraph and possibly paragraph 7 of the will, though we are not here deciding that point. If, however, we look upon the paragraph as saying in effect, ''I want to provide for each of my nieces during her lifetime and for each of my grand-nieces at least until she is 50 years of age, after that the property to be distributed to my surviving grand-nieces or the lawful issue of my deceased grand-nieces'' we have not only done no violence to the simple rules and logic of construction, but have read the paragraph so as to keep all of its provisions valid and so as to effectively sustain the unmistakable intention of the testator. It is a question of how much of the passage modifies the word ''upon''. Appellant asks us to hold that no part of the passage modifies ''upon'' excepting that which refers to the death of the nieces, but such a construction vitiates the whole trust plan. It is just as reasonable from the standpoint of construction and much more reasonable, when the whole paragraph is considered, to hold that all of the passage modifies the word ''upon''. That is, the trust ends when the nieces are dead and it is also true, that the grandnieces are either dead or over fifty years old. Otherwise the trust shall continue according to the other terms of the paragraph.

We think appellant's petition for distribution of a part of the estate to him as property left intestate was properly denied and that the order of the distribution which sustained the trust provisions of both paragraphs 7 and 8 was correct.

The orders are affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 14, 1932, and the following opinion then rendered thereon:

THE COURT.—After a careful and due consideration of appellant's petition for rehearing we find ourselves satisfied with our construction of the provisions of the will in question. We greatly regret, however, that a passage of our opinion, referred to and quoted from on page 8 of the petition for rehearing, appeared in the copy of the opinion furnished appellant. Its inadvertent inclusion was discovered almost immediately after filing and was stricken. It is apparent that it has not misled appellant.

The main argument for rehearing relates to the beneficence to Lolita King and has not heretofore been adverted to. The petition rather pointedly accuses us of overlooking the point. We have industriously re-read all of the briefs and the conclusion seems inevitable that the oversight was with appellant. Counsels' close vision was impaired, perhaps, by the great degree of confidence entertained by them in the point presented. Whether or not the new point would change the ruling we cannot, of course, say; and if it were not for the practice we would gladly again entertain the appeal and permit the filing of supplemental briefs.

However, we feel that our course should be made to conform to the well-known doctrine expressed in the opinion denying a rehearing in *Mann* v. *Brison,* 120 Cal. App. 450 [7 Pac. (2d) 1110, 9 Pac. (2d) 257], and cases cited therein, that rehearings will not be granted for the purpose of considering points not included in the original briefs.

Rehearing denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 17, 1932.