[Civ. No. 9556. First Appellate District, Division One.—August 5, 1935.]

D. L. CONNER, Respondent, v. EAST BAY MUNICIPAL UTILITY DISTRICT (a Corporation) et al., Appellants.

614

Crosby & Crosby for Appellants.

Clark, Nichols & Eltse for Respondent.

WARD, J., *pro tem.*—Upon the date mentioned in the complaint plaintiff was going to work and stopped on a sidewalk for a few seconds near the intersection of public streets in the city of Berkeley. Defendant East Bay Municipal Utility District, a corporation, and codefendants and employees thereof, Storer and Klobas, were engaged in placing a connection in a certain water main at the intersection of the streets. Klobas was cutting chunks from a pig of lead preparatory to heating it to be used in sealing the connection. The tools used in this work were a ten-pound sledge hammer, and a type of cold chisel referred to variously in the testimony as a bitumen, lead or babbitt cutter. The head of the cutter had mushroomed, spread and chipped from repeated pounding. A flake of steel from the cutter flew into the left eye of plaintiff resulting in the loss of the eye. A jury rendered a verdict in favor of plaintiff in the sum of $20,597.93. Defendants urge alternative contentions; namely, that defendants owed plaintiff no greater duty than that they should not wilfully or wantonly injure plaintiff, or that if the degree of care required be that of ordinary care the breach of that duty has not been proven.

The theory of the onlooker-rule is that one engaged in lawful occupation on a public highway owes to a person who has no business requiring his presence and who is present without invitation and merely for the purpose of satisfying curiosity, only the duty to refrain from wantonly or intentionally inflicting injury upon such person. (45 Cor. Jur.

840.) The defendants were engaged in a lawful occupation. The plaintiff likewise had a right to the use of the street in traversing the sidewalk on his way to work. (*Schediwy* v. *McDermott*, 113 Cal. App. 218, 222 [298 Pac. 107].) An onlooker "must take care of [himself] except as against wantonness or willfulness, or except under peculiar circumstances of some undisclosed danger". (*Currier* v. *Trustees of Dartmouth College*, 117 Fed. 44, 50.) The plaintiff in this case stopped at the intersection long enough to witness the defendant Klobas strike the babbitt cutter four or five times.

Stopping in the course of a journey is a normal use of the street or sidewalk, and the status of a traveler is not lost by neglecting to keep constantly moving. (*Silverman* v. *Usen*, 128 Me. 349 [147 Atl. 421].) A traveler engaged in a lawful occupation may become an onlooker, but the question of how long one may remain in a particular place upon a highway without ceasing to be a traveler is a question for the jury to decide. (13 R. C. L., p. 517, sec. 429.) The jurors evidently determined by their verdict that plaintiff's act in pausing for the purpose of determining what was occurring on the street did not take the plaintiff out of the category of a traveler. In addition thereto, the evidence proved that there was an undisclosed danger. Under all the circumstances of the case this determination of the jury should not be disturbed. (*O'Brien* v. *Hudner*, 182 Mass. 381 [65 N. E. 788]; *Burford* v. *City of Grand Rapids*, 53 Mich. 98–104 [18 N. W. 571, 51 Am. Rep. 105]; *Lydston* v. *Rockingham County Light & Power Co.*, 75 N. H. 23 [70 Atl. 385, 21 Ann. Cas. 1236]; *Parker* v. *Oswego Construction Co.*, 80 Misc. 295 [142 N. Y. Supp. 214].)

Defendants may be absolved of conduct evincing a reckless disregard for the safety of others or a willingness to inflict injury, but if there was a neglect to use ordinary care in the operation of cutting the lead plaintiff is entitled to redress. Defendants were bound to employ implements, equipment and a device which could be used with reasonable safety to protect travelers having equal rights to the use of the highway. Plaintiff was using the sidewalk for traveling, the purpose for which it was established. The requirements of the rule of care vary in direct ratio with the degree of danger to another. Knowledge of the dangerous char-

acter of an instrument is sometimes equivalent to foresight of the way in which it will act. This is not a case of a hidden, unsuspected defect in the instrument; on the contrary, defendants had reason to anticipate the likelihood of injury to another. A cold chisel may not be in and of itself a dangerous instrumentality, but its use under certain circumstances may render it so. (*Sutliff* v. *Sweetwater Water Co.*, 182 Cal. 34 [186 Pac. 766].) It may be applicable for one purpose but unsuitable for another. Defendant Storer, the foreman, testified that he had control over the implement used; that he was familiar with the babbitt or lead cutter selected for this particular work; that he saw it before it was taken out of the tool box; that the chipping down the sides of the implement had started eight months before the accident; that if it was used in the public street and hit by a sledge hammer, probably pieces might fly off and strike some person. Defendant Klobas testified that no guard or other device was used to stop flying chips; that it was probable but that he could not tell whether or not "when a chisel has that much gone off of it and you were about to hit it . . . , that somebody was likely to get hurt as a result of chips flying off". The cutter was introduced in evidence; the jury had the opportunity of examining it minutely, and from all the circumstances were justified in determining that the tool was in such condition from breakage and deterioration that it would likely chip at any time from the blow of a sledge hammer, and that such fact was known by defendants. It is not the law that the exact injury should be anticipated. When a person is negligent he is liable for all the natural and probable consequences of his negligent act. (45 Cor. Jur. 913–920.) The defectiveness of the instrument was not apparent to plaintiff in his position, fifteen or eighteen feet away. The fact that a person having a right to the use of the sidewalk or street stopped to watch the work performed, though the stopping may have been the result of idle curiosity, still if the condition of the instrument was defective and the defect was not or could not be apparent to a pedestrian using ordinary care, it is incumbent upon the user of the instrument to protect those having equal rights to the use of the street by taking necessary precaution to avert injury. The rule of ordinary care is not rigid or inflexible

but is based upon the theory that such prudence and caution should be exercised as would be taken by a reasonable person acting under similar circumstances.

██ Plaintiff produced an expert witness who was interrogated relative to certain technical facts concerning cohesive strength of steel, the effect of striking the steel, whether the chisel or cutter could have been treated in a manner to eliminate breaking and chipping, and whether if chipped the pieces thereof would be likely to fly through the air when hit with a ten-pound sledge hammer in the hands of a two hundred thirty-five pound workman. After eliciting evidence upon these subjects counsel for plaintiff asked the witness in substance whether the blade was in a reasonably safe condition for use in the public street while people passed on the sidewalk. The last question and the negative answer invaded the province of the jury, but the evidence was amply sufficient to support the verdict without the answer of the expert. Eliminating the court's ruling in permitting this question, the record is free from error. Appellate courts are seldom in a position to measure the precise effect that flows from the presentation of inadmissible evidence. The general rule seems to be that when the weight of the evidence is closely balanced the admission of opinion evidence which invades the prerogatives of the jury is prejudicial. We are not satisfied that this opinion evidence prevented the jury from considering the case on its merits. The right of plaintiff to recover did not depend primarily upon the expert's testimony. The answer to the question was not one to appeal to the sympathy of the jurors and cause them to become prejudiced against defendants, or one without which a contrary verdict would have been rendered. We are satisfied that upon a retrial, without this evidence, a second jury would likewise find for the plaintiff.

██ Appellants contend that the damages awarded, $20,597.93, are so excessive as to appear to have been given under the influence of passion and prejudice. The amounts fixed in verdicts rendered by juries in other cases and approved by the courts constitute a fair criterion to follow. *Maede* v. *Oakland High School District*, 212 Cal. 419 [298 Pac. 987], and *Damgaard* v. *Oakland High School District*, 212 Cal. 316 [298 Pac. 983], are somewhat similar cases, in-

volving the loss of sight, wherein the damages were fixed at $16,000 and $15,000 respectively. In *Langford* v. *Kosterlitz,* 107 Cal. App. 175 [290 Pac. 80], the court, referring to the loss of an eye, assessed damages in the sum of $15,000 and said: " . . . the sum of $15,000 is very small rather than excessive". In *Katz* v. *Helbing,* 215 Cal. 449 [10 Pac. (2d) 1001], the amount of the verdict, $30,000, was upheld; and in *Szasz* v. *Joyland Co.,* 84 Cal. App. 259 [257 Pac. 871], a judgment of $20,000 was affirmed. The facts in each of the above cases are dissimilar relative to the age of the injured, the humiliation suffered, the ability to attend to business and in other factors, but the award adjusted was declared in each case to be fair. The verdict rendered in this case is not greatly disproportionate to that in the cases cited, and the facts are sufficiently similar to justify the conclusion in the absence of a showing to the contrary that the jury was not under the influence of passion or prejudice in assessing this award.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 4, 1935, and the following opinion then rendered thereon:

THE COURT.— In denying the petition for rehearing herein, it may be said that in our opinion the state of the evidence in the case is such that the refusal of the trial court to give the two instructions set out in appellant's petition did not result in a miscarriage of justice, and consequently in no event would such refusal constitute grounds for reversal of the judgment. (Const. Cal., art. VI, sec. 4½.) Moreover, the suggestion that the refusal to give these two instructions was error is made for the first time in the petition for rehearing, and it has been repeatedly declared that a rehearing will not be granted under such circumstances. (*Estate of Edwards,* 126 Cal. App. 152 [14 Pac. (2d) 318, 15 Pac. (2d) 194]; *Mann* v. *Brison,* 120 Cal. App. 450 [7 Pac. (2d) 1110, 9 Pac. (2d) 257]; *Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697 [275 Pac. 944, 276 Pac. 995]; *In re Novotny's*

*Estate,* 94 Cal. App. 782 [271 Pac. 923] ; *People* v. *New York Indemnity Co.,* 113 Cal. App. 487 [298 Pac. 849].)

Rehearing denied.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 3, 1935.