[Civ. No. 1340.   Third Appellate District.—August 16, 1915.]

## PHILLIP WEAVER, Respondent, v. A. R. CARTER, Appellant.

ACTION FOR DAMAGES—NEGLIGENCE—VIOLATION OF LAW—PROXIMATE CAUSE OF INJURY.—Where a tort is the direct result of the violation of some statutory or other law, and the party suing for damages relies upon the infraction of such law for a recovery, it must be made to appear and the court must so instruct the jury that, before a recovery in such case is sustainable, the act of the defendant in violating such law was the proximate or direct cause of the tort or injury; and it is also the duty of the court to state to the jury all the conditions to which such law subjects both the plaintiff and the defendant with respect to the performance of the duties therein prescribed to them.

ID.—PERSONAL INJURIES—INSTRUCTIONS—PROXIMATE CAUSE OF INJURY.—In an action for damages for personal injuries sustained by the rider of a bicycle on a public highway from being run over by a passing automobile, an instruction to the jury that if they should find from the evidence that the plaintiff while free from negligence was riding his bicycle along the highway and upon the right-hand side thereof, and that the defendant overtaking him attempted to pass him upon his right-hand side, and in so attempting collided with him and thereby injured him, that the defendant was negligent and responsible for the injuries, is not objectionable by reason of the omission to state in terms that before the jury was warranted in finding against the defendant, it must have appeared to their satisfaction from the evidence that the attempt of the defendant to thus pass the plaintiff on the right was the proximate cause of the injury, or by reason of the omission to state, as the statute prescribes, that it is the duty of a person "riding or driving a horse or horses

28 Cal, App.—16

. . . or any other vehicle" on a public highway and overtaken by the driver of a motor vehicle, *as soon as practicable,* to "turn to the right so as to allow free passage on the left."

ID.—INSTRUCTIONS—CONSTRUCTION OF AS A WHOLE.—All the limitations, qualifications, or conditions which must ordinarily accompany the statement of principles of law to a jury in a particular case cannot be given in one sentence, nor in one paragraph, nor in a single instruction, and where they are found properly stated in the general charge of the court, the cause will not be reversed even though in isolated passages there is an omission to state them.

ID.—NEGLIGENCE OF DEFENDANT—VERDICT SUPPORTED BY EVIDENCE.—In this action it is held that there is ample evidence to sustain the verdict that the defendant was guilty of negligence in operating his automobile at a rate of speed in excess of that fixed by the statute, or at any rate at a greater speed than was reasonable and proper considering the narrowness of the highway and extent of traffic thereon.

ID.—APPEAL—CONFLICTING EVIDENCE.—Where there arises a substantial conflict in the evidence which is not inherently improbable and which is capable of supporting a finding either way, the determination by the jury or trial court of the effect of such evidence is final and conclusive and not open to review.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. P. F. Gosbey, Judge.

The facts are stated in the opinion of the court.

W. A. Beasly, H. D. Tuttle, R. R. Syer, and Owen D. Richardson, for Appellant.

L. E Petree, and J. P. Sex, for Respondent.

HART, J.—Action for personal injuries. The plaintiff was awarded judgment for the sum of one thousand five hundred dollars upon a verdict returned by the jury in said amount.

The defendant moved for a new trial, which motion was disallowed, and he brings the case to this court on an appeal from the judgment and the order denying his application for a trial *de novo.*

The complaint fully states the facts (to which due reference by way of a review of the evidence will hereafter be

made) constituting the ground of the plaintiff's claim to damages.

The answer of the defendant denies negligence and sets up contributory negligence on the part of the plaintiff as the efficient or proximate cause of the accident whereby his injuries were sustained.

The accident occurred on the seventeenth day of June, 1911, at about the hour of 4 o'clock P. M., on a public highway commonly known as the "Stevens Creek Road," in Santa Clara County. Said road connects at a certain point with what is designated and known as the "Saratoga and Santa Clara" Road, and the junction of said roads is called and known as "Meridan Corners." Stevens Creek Road passes through a thickly settled community and there is, consequently, always a heavy traffic thereon. Running along said road and on the north side thereof is the track of the Peninsular Railway Company, leaving a space on said road less than twenty-five feet in width for travel by automobiles, bicycles, and other vehicles.

At the time above stated, the plaintiff, who was then a man of approximately sixty-five years of age, was riding a bicycle along and over the Stevens Creek Road, traveling in a westerly direction. When arriving at a point about nine hundred feet west from the junction of said road and the Saratoga and Santa Clara Road, he saw an automobile coming toward and not far distant from him, traveling in an easterly direction, and thereupon, for the purpose of safely passing said automobile, he took the right or north side of the highway, near the track of the said Peninsular Railway Company. He continued to travel west along the north side of said road near said track, and, as he was so traveling and approaching the automobile going east on said road, a large automobile owned and driven by the defendant, traveling west on said road and, as the complaint alleges, "at an excessive and unlawful rate of speed," approached the plaintiff from the rear. When the machine traveling east was in the act of passing the plaintiff, the defendant ran his machine over the plaintiff, thereby causing the injuries of which he here complains.

The plaintiff was removed to a sanatarium, where he was attended by a physician, who found him in a semi-conscious condition, and the bones of his right arm severely crushed. Indeed, the doctor testified that "the bone was crushed all to

pieces and the muscles and ligaments were bady torn; great masses of muscle were torn out entirely and he was suffering from shock and hemorrhage and some small wounds on the head and on the left arm, but the really severe injury was to his right arm. . . . I found it necessary to remove a large part of the broken fragments of the humerus of the upper arm, which shortened the arm three inches and it was necessary to wire the broken remains together. . . . He was (otherwise) in rugged health and I found no organic trouble in him in my examination. The mobility of his arm has been impaired; . . . this is a fixed condition; it is much weaker than it would otherwise have been from loss of bone and muscle, and also from the impaired mobility of the elbow joint.''

The above is only a general statement of the facts as they are mainly taken from the complaint.

Two general points for a reversal are urged by the defendant, viz.: 1. That the court below misdirected the jury on matters of law; 2. That the evidence does not support the verdict.

The particular part of the court's charge of which the defendant complains is the third paragraph of the following instruction:

''I instruct you, that one who violates a rule of law governing the use of a public highway, or to fix how the passing of a vehicle shall be conducted, or the side upon which they shall pass each other is guilty of negligence, and the one so violating any of these rules or attempting to pass a vehicle on a side other than is provided and prescribed by law assumes the burden of his experiment, and is liable for any injury that takes place by reason of, or through such violation of the law, provided, however, that the party who has sustained the injury has not contributed to the injury.

''The statute is positive and mandatory that an automobile approaching and attempting to pass a vehicle from the rear must pass such vehicle on the left hand side thereof, while the driver of the vehicle to be passed, must, as soon as practicable, turn to the right so as to allow free passage on the left.

''I instruct you, gentlemen of the jury, that if you find from the evidence in this case that the plaintiff, Philip Weaver, while free from negligence, was riding his bicycle along the Stevens Creek Road, and upon the right hand side thereof, and that the defendant, Carter, overtaking him, attempted to pass

him upon his right hand side, and in so attempting to pass said Weaver, collided with him, and thereby injured him, that under such circumstances the said defendant, Carter, was negligent, and is responsible for the injury inflicted by him and that plaintiff under such circumstances is entitled to recover judgment against him for such amount as you may determine in accordance with the rules already announced."

The foregoing instruction was intended to embrace and declare the law of the road as established by the legislature of 1905 and 1907. (Stats. 1905, p. 816; Stats. 1907, pp. 916, 917, being an act amendatory of the act of 1905.)

Section 4, subdivision 1, of said act provides as follows: "Whenever a person operating a motor vehicle shall meet on a public highway any other person riding or driving a horse or horses or other live stock, or any other vehicles, the person so operating such motor vehicle shall seasonably turn the same to the right of the center of such highway so as to pass without interference. Any such person so operating a motor vehicle shall, on overtaking any such horse, live stock or other vehicle, pass on the left side thereof, and the rider or driver of such horse, live stock or other vehicle shall, as soon as practicable, turn to the right so as to allow free passage on the left. Any such person so operating a motor vehicle shall at the intersection of public highways, keep to the right of the intersection of the centers of such highways when turning to the right and pass to the right of such intersection when turning to the left."

It is conceded by counsel for the defendant that the first and second paragraphs of the above quoted instruction embody a correct abstract statement of the law regulating the use of the public highways by persons operating motor vehicles under the conditions specified in the above section of the statute. It is, however, claimed that the third paragraph, which is concrete in form or in such language as to make it specially applicable to the general facts of this case, involves an erroneous statement of the law whose terms it attempts to state for these reasons: 1. That it nowhere declared to the jury in terms that, before they were warranted in finding against the defendant, it must have appeared from the evidence to their satisfaction that the attempt of the defendant, if there was such attempt on his part shown, to pass the plaintiff on the right constituted the proximate cause of the injury or directly contributed thereto.

The argument in support of this criticism of the instruction is that the instruction as phrased and given was susceptible of the construction by the jury that the "very act of attempting to pass on the right side made the defendant liable if the collision occurred while such attempt was being made, even though the attempt had no causal relation to the injury."; and, 2. That said paragraph of the instruction does not declare, as the statute prescribes, that it is the duty of the person "riding or driving a horse or horses . . . or any other vehicle" on a public highway and overtaken by the driver of a motor vehicle, *as soon as practicable,* to "turn to the right so as to allow free passage on the left."

Counsel for the defendant are undoubtedly right in the contention that, where, as is the theory of the plaintiff here, a tort is the result of the violation of some statutory or other law, and the party suing for damages relies upon the infraction of such law for a recovery, it must be made to appear and the court must so instruct the jury that, before a recovery in such case is sustainable, the act of the defendant in violating such law was the proximate or direct cause of the tort or injury. It is equally true that it is the duty of the court to state to the jury all the conditions to which such law subjects both the plaintiff and the defendant with respect to the performance of the duties therein prescribed to them. And we think it becomes very clear, when viewing the above quoted instruction as a whole and by the light of the entire charge, rather than considering a detached excerpt therefrom only, that the objections of counsel to said instruction will be found to be groundless.

In the first place, if counsel intend to say by their criticism of the instruction in that respect that it should have contained a statement in express language that the attempt to pass on the right must have been the proximate cause of the injury, then we are constrained to answer that there was no necessity for such a statement therein. While it was for the jury to determine the question whether the defendant was guilty of an infraction of the statute and the further question whether such infraction constituted the direct cause of the injury, it was within the province of the court to state the conditions which should be shown to be present to constitute the act of the defendant and its tortious consequences negligence for which he would be liable, and this is what the court plainly

did in the instruction under review, and where, as is true here, the court makes the statement to the jury that the defendant would be guilty of negligence making him responsible for the injury inflicted upon the plaintiff if, in attempting to pass the latter contrary to the inhibition of the statute in that regard, the injury complained of was sustained, provided the plaintiff was blameless or free from negligence, such statement necessarily involves the declaration that such negligence on the part of the defendant, if found to have existed, with the qualification as to the conduct of the defendant, would constitute the proximate cause of the injury; and we cannot perceive how it was not thus made perfectly clear to the jury that a finding by them that the defendant was guilty of the negligence so described, the plaintiff being blameless or not having by any fault of his contributed to the injury, would of necessity amount to a finding that such negligence on the part of the defendant was the direct or proximate cause of the tort.

But, as stated, the instruction should be read as a whole and considered in connection with the full charge of the court.

The courts have often pointed out the fallacy which often characterizes the attempt to invalidate a verdict by selecting certain detached passages in the charge of the court and subjecting them to a technical and often a somewhat hypercritical analysis to show that they misstate the law or are calculated to mislead the jury to the prejudice of the rights of one of the parties to the action. It is hardly conceivable that a set of instructions could be prepared from which isolated parts could not be selected and conclusively shown, when taken alone and by themselves, to be erroneous and detrimental to a party to the suit. Hence, the obvious proposition has often been emphasized that all the limitations, qualifications, or conditions which must ordinarily accompany the statement of principles of law to a jury in a particular case cannot be given in one sentence, nor, indeed, in one paragraph or a single instruction, and that where they are found properly stated in the general charge of the court, the cause will not be reversed even though in isolated passages there is an omission to state them. In other words, if all the instructions taken together, and not being inconsistent with each other or confusing, give to the jury a fair and just notion of the law upon the point to which they are addressed, it is sufficient.

(*Davis* v. *Button,* 78 Cal. 247, 251 [18 Pac. 133, 20 Pac. 545] ; *Stephenson* v. *Southern Pac. Co.,* 102 Cal. 143, 150, [34 Pac. 618, 36 Pac. 407] ; *People* v. *Lee Chuck,* 78 Cal. 339, [20 Pac. 219] ; *People* v. *Doyell,* 48 Cal. 85; *Monaghan* v. *Pacific Rolling Mill Co.,* 81 Cal. 190, [22 Pac. 590] ; *Murray* v. *White,* 82 Cal. 119, [23 Pac. 35] ; *Doty* v. *O'Neil,* 95 Cal. 244, [30 Pac. 526] ; *People* v. *Turcott,* 65 Cal. 126, [3 Pac. 461] ; *People* v. *Kennealy,* 55 Cal. 201; *McKune* v. *Santa Clara Val. M. & L. Co.,* 110 Cal. 480, [42 Pac. 980] ; *Fenn* v. *Clarke,* 11 Cal. App. 79, [103 Pac. 944] ; *People* v. *Besold,* 154 Cal. 363, [97 Pac. 871].)

The reading of the entire charge delivered to the jury in the case at bar will readily disclose that the court plainly enough told the jury that the act of a party in violating a statute or other law, where the result of such act is the infliction of personal injury upon another, is evidence of negligence and (in substantial effect) that, before they would be legally authorized to find for the plaintiff, it was requisite that three propositions be established to their satisfaction, viz: 1. That the defendant had attempted to pass the plaintiff in violation of the statute; 2. That such act on the part of the defendant was the direct cause of the injury received by the plaintiff; 3. That the plaintiff himself in no way or degree contributed to the injury. Thus the jury were sufficiently enlightened upon the proposition that, to warrant a verdict against the defendant, the evidence must have been such as satisfactorily to show to them that the proximate cause of the injury to the plaintiff was the negligence of the defendant in violating the provision of the statute regulating the manner in which the driver of a motor vehicle, in approaching from the rear a party riding a horse or driving a vehicle along the same public highway, shall pass him upon such highway.

Besides the foregoing considerations with respect to the instruction in question, it is to be remarked that the record does not show that the defendant either requested the court to instruct the jury as to the qualification referred to or proposed one embodying it. We may presume that no such request was preferred by the defendant. Therefore, even if it were true that the qualification mentioned was not explained in other parts of the charge, having failed to do either of these things, the defendant is in no position to complain of the instruction as given, it being clear, as before stated, that it contains a

correct statement in the abstract of the law of the road as established by our statute. (*O'Connor* v. *United Railroads,* 168 Cal. 43, 53, [141 Pac. 809].)

Much of what has been said above applies with equal pertinency and force to the second ground of criticism advanced against the instruction. The statute, as we have seen, makes it the duty of the rider or driver of a horse or vehicle, upon being approached from the rear by the driver of a motor vehicle, to turn to the right of the highway *as soon as practicable,* so as to allow free passage on the left. The duty thus imposed upon such rider or driver was not, as shown, referred to in the instruction complained of. But elsewhere in its charge the court instructed the jury: "Any person operating a motor vehicle in any public highway shall, in overtaking any other vehicle, pass on the left side thereof, and the rider or driver of such other vehicle shall, *as soon as practicable,* turn to the right so as to allow of free passage upon his left. It is as much the duty of a person riding a bicycle on a public road, on being approached from behind by another motor vehicle to 'seasonably turn to the right so as to permit the approaching vehicle to pass him at the left' as it is for the latter to turn to the left to go by."

And in other parts of the charge the court frequently referred to the duty of the person riding a horse or vehicle in front of an approaching motor vehicle to "seasonably turn to the right as directed by law."

Thus it is clear that, from the entire charge, the jury, being presumptively men of fair, average intelligence, could not have but clearly understood that it was the duty of the plaintiff, under the law, upon being approached from behind by a motor vehicle, to turn to the right of the highway *as soon as practicable.*

In concluding upon this branch of the case, we may properly remark that the court clearly instructed the jury upon all the essential or vital issues. It told the jury, among other things, that the defendant had the legal right, in traveling west, to drive his automobile on the north side of the highway; that, unless a bicycle rider *seasonably* turns to the right upon being given warning of the approach from the rear of an automobile, the driver may legally pass such bicycle on the right; that "if you find from the evidence that Weaver (plaintiff) by taking and maintaining such a position on the left as prevented Car-

ter (defendant) from turning to the left to pass without himself violating the law or colliding with another vehicle which was meeting him, I instruct you that, as between himself and Weaver, Carter had the right, if you find that he first gave seasonable and proper warning of his intention, to pass Weaver upon the latter's right hand side." Responding to evidence tending to show that the plaintiff was suffering from serious impairment of his sense of hearing, the court further instructed the jury that if they found that "Weaver was so deaf that he could not hear the signal given by an ordinary loud horn of an automobile, then it was his duty to be still more prudent and careful in the use of his eyes to keep himself informed as to what was approaching from behind so as to protect himself from injury." In short, so much of the charge as is incorporated in the bill of exceptions involves a clear, fair, and correct statement of all the pertinent principles of law essential to a just and an enlightened consideration of the proofs by the jury.

There is ample evidence in the record to sustain the verdict.

The statute of this state (Stats. 1907, pp. 915, 916), provides: "No person shall operate a motor vehicle on a public highway at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the highway, or so as to endanger life or limb of any person, or the safety of any property; or in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate than one mile in six minutes. . . . "

There is evidence which shows, as the complaint alleges, that the country contingous to the highway in question was thickly settled or "closely built up" within the evident meaning of the statute; that the beaten or traveled part of said road was but twenty-five feet in width; that there was constantly a heavy traffic thereon and "automobiles come in all shapes and speeds, some fast and some slow over said road."

The witness, Williams, testified that, as he was traveling with his wife in his machine on said road, going west, at the rate of about twenty miles an hour, on the day of the accident and shortly prior thereto, the defendant, in his machine, passed him, going in the same direction and sped on "at a good clip" until he reached the point at which the collision of the defendant's machine with the plaintiff occurred; that, when the accident happened, he (Williams) was about a

quarter of a mile behind the defendant. Mrs. Williams cor-
roborated her husband, except as to the speed at which they
were traveling when the defendant passed them, and as to that
matter, while saying that they were then traveling at a pretty
good speed, she seemed unable to approximate the rate.

The witness, Evelyn Tressler, testified that, immediately pre-
ceding the accident, the defendant was, in her judgment,
going at the rate of between twenty and twenty-five miles an
hour.

Carter himself testified that "after I passed Mr. Williams
and up to the time of the accident I was not driving my ma-
chine over eighteen miles an hour," thus admitting, at least
inferentially, that the rate of speed at which he was moving
was at least eighteen miles an hour.

Thus it will be observed that, if the country contiguous to
the road was "closely built up," within the meaning of that
phrase in the law, the defendant violated said law by driving
his machine beyond the rate of speed fixed by the statute,
which was of itself negligence. If, however, the conditions
were not such as to bring the rate of speed at which he was
traveling within the purview of the "one mile in six minutes"
inhibition of the statute, it was, nevertheless, for the jury to
say from all the evidence whether, in driving his automobile
over the highway at the time of the accident, he did so "at
a rate of speed greater than is reasonable and proper, having
regard to the traffic and the use of the highway, or so as to
endanger the life or limb of any person," etc., and their de-
termination of this question is, under the state of the record
evidence, conclusive upon this court.

But the record contains evidence which, if believed by the
jury, as certainly we must assume that it was, showed negli-
gence in another form and of which we had something to say
in disposing of objections to the instruction above considered.
There was evidence tending to show that plaintiff, seeing the
automobile which was traveling east or coming toward him,
and with the purpose of giving it room to pass, turned to the
right or the north side of the road and thus took a position
near the track of the Peninsular Railway Company, which was
located on the north side of the highway and off the beaten or
traveled part thereof; that, when the accident occurred, the
machine of Carter and the one traveling east met at a point
where the plaintiff was riding his bicycle. In fact, that the

machine going east was almost directly opposite Carter's machine when the accident happened, is not only not disputed but conceded; that the defendant, to avoid colliding with the automobile traveling east, turned his machine to the north just as he reached the point where the plaintiff was traveling and attempted to pass the plaintiff on the right side, the latter, as stated, then being close to the track of the railway company mentioned, and in doing so ran over the plaintiff. At this point of time, so there is evidence tending to show, the plaintiff was in front and about the center of the line of the defendant's machine, the left wheel of which, according to one of the witnesses, struck the plaintiff. There is evidence that the defendant did not slacken the speed at which he was traveling when he passed the witness, Williams, until the collision occurred. In fact, the defendant admitted this.

Thus we have this situation: That the highway upon which the accident occurred was a very narrow one, so far as was concerned the part thereof prepared for use by vehicles; that the defendant was traveling at a rate of speed in excess of that prescribed by the statute, or, at any rate, we may safely assume from the proofs, at a rate, when considering the extent of the traffic on and use of the road, which was unreasonable and improper, and which was such as might likely endanger the life or limb of other persons traveling at the time upon said highway; that the defendant had a full view of the whole situation, saw both the machine traveling toward him and the plaintiff on a bicycle going from him or in the same direction; that, with a recklessness characteristic of too many drivers of motor vehicles on the public highways, he, driving a machine of great weight and power, moved along to the point where the misadventure occurred at a rate of eighteen miles an hour and attempted to pass the plaintiff to the right over the exceedingly narrow margin of the road lying between the line along which the plaintiff was traveling and the railway track, after the latter in full and plain view of the defendant, had turned from the center of the highway to the right, as it was his duty to do under the law and the circumstances. There is evidence, we say, from which the facts thus stated could justly have been and doubtless were found by the jury, and as so found they established against the defendant a case not far short of criminal negligence—negligence which, obviously, directly caused the injuries received

by the plaintiff. Thus we characterize the conduct of the defendant in producing the injuries to the plaintiff because, as stated and as is clearly true, he was familiar with the general conditions existing on the highway with respect to the large volume of traffic with which it was customarily burdened and knew the then situation with respect to the plaintiff. In other words, knowing, as he must have known, the extent to which the highway was used, knowing its narrow width and the situation generally at the time the plaintiff was about to meet another machine traveling toward him, he not only failed to exercise the care and prudence commensurate with the dangers and risks of the highway and the conditions then existing thereon, but grossly neglected to regulate the speed of the machine according to those conditions and attempted to pass the plaintiff in a manner directly violative of an express mandate of the statute.

There is, it is to be conceded, a sharp conflict in the evidence bearing upon the vital facts of the controversy, but it requires the citation of no authorities to confirm the thoroughly settled and well-understood proposition that where there arises a substantial conflict in the evidence, which is not inherently improbable and which is capable of supporting a finding either way, the determination by the jury or trial court of the effect of such evidence is final and conclusive and hence not open to review.

Of course, the verdict is wholly out of harmony with the theory of the defense that the plaintiff sustained his injuries solely and directly through his own negligence and consequently involves an implied finding against the defense of contributory negligence.

For the reasons stated in the foregoing, the judgment and the order are affirmed.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.