[S. F. No. 14131. In Bank.—April 30, 1931.]

MAURICE MAEDE, a Minor, etc., Respondent, v. OAKLAND HIGH SCHOOL DISTRICT, etc., et al., Appellants.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Oakley, Frank M. Ogden and R. Robert Hunter, Deputies District Attorney, for Appellants.

James F. Brennan, John J. McMahon and P. J. Murphy for Respondent.

THE COURT.—The action was dismissed as to all the individual defendants. The appeal is, therefore, taken by the remaining corporate bodies from the judgment entered against them in the sum of $35,000 and in favor of respondent Maurice Maede, a minor of the age of fifteen years, as and for damages suffered by reason of the loss of his left eye, and for other injuries of a temporary and minor character. Said damages were assessed by the jury selected to try the issues of fact and the trial court, after raising some question as to the amount of the verdict being excessive, finally adopted the jury's finding as to the damages sustained. The action was prosecuted by a guardian *ad litem*. Said minor was, at the time he sustained said injuries, to wit, September 6, 1928, a pupil in attendance upon the Oakland High School District of the County of Alameda, State of California, and received said injuries while pursuing his studies in the vocational department thereof, by reason of the explosion of an oxygen pressure gauge, alleged to have been caused by the fault of the agents and employees of said Oakland High School District. The amended complaint contains three causes of action, the first of which was framed with the intent of bringing the case within the purview of section 2, of Act 5619, Deering's General Laws, 1923, Statutes of 1923, page 675, which imposes liability upon counties, municipalities and school districts for inju-

ries to persons, resulting from the dangerous or defective condition of public streets, highways, grounds, works and property, in all cases where the governing boards of such bodies, having authority to remedy such defects or dangerous conditions, have, upon acquiring knowledge or receiving notice thereof, failed or neglected for a reasonable time thereafter to do so.

It is not made altogether clear by the language of said first cause of action precisely what the negligence consisted in. We gather, however, from it that one or more of the instructors of said Oakland High School caused said minor to attach a safety gauge to an oxygen tank used in vocational training which was defective or insufficient and unfit for the use for which it was offered, and the excessive pressure within the tank, being beyond the strength of the gauge to withstand, blew up or exploded, resulting in the injuries complained of. The maintenance of said gauge and defective appliance with knowledge, actual or constructive, on the part of defendants of its condition, is pleaded.

Causes of action two and three are but restatements of the same causes of action, expressed in different form, and amount to allegations constituting general negligence and bring the respondent within the terms of section 1623 of the Political Code, as amended in 1923, the provisions of which are hereafter set forth.

The opinion of the District Court of Appeal, First Appellate District, Division One, Lucas, J., pro tem., author, from which court this cause was transferred after decision, contains a full and fair summary of the case, which we herewith adopt as a part of our decision:

"On the morning of September 6, 1928, the plaintiff, as part of the curriculum of a class in oxy-acetylene welding, was with another student named John Jensen, assigned by their instructor, Joseph Petty, to braze a piece of brass; the Jensen boy being more experienced was to do the work and the plaintiff to watch the operation. Upon starting work the boys discovered that the gauge on the oxygen tank was leaking. When this was reported to Petty he instructed them to remove the gauge assembly from the tank and he went to the adjoining automobile shop to get another. At that shop he asked one L. R. Priest, the instructor, for the gauge which he, Priest, had borrowed the day before. Pre-

sumably getting that gauge, he returned to the welding class and gave it to the Jensen boy with instructions to connect it to the oxygen tank. Jensen laid the gauge on a nearby table and the plaintiff connected it to the tank. When the connection was made plaintiff turned on the pressure in the oxygen tank. Instantly the gauge blew out, the glass from its face striking plaintiff, resulting in the loss of one eye, a cut on the nose and slight cuts on the chest.

"The equipment in question consisted of a set of two gauges, each connected to a pressure regulating and reducing valve, one of which gauges was to indicate the pressure in the oxygen tank and the other to indicate the reduced pressure of the oxygen after being reduced to a workable pressure in the regulating valve. The normal pressure per inch in the oxygen tanks was about 2000 pounds and the normal working pressure about 50 pounds. The correct gauges to register these pressures should be gauges of 3000 pounds pressure and 50 to 400 pounds pressure respectively.

"After the accident it was discovered that the gauge given to the boys by Petty was one registering 400 pounds only and not capable of withstanding the high pressure in the oxygen tank, which pressure when applied consequently blew out the gauge.

"Plaintiff in his amended complaint alleged that the gauge constituted a dangerous and defective condition of property, that defendants knew and had notice of such condition and negligently failed to remedy the same, bringing his allegations under the provisions of section 2 of statutes 1923, page 675. Defendants, pursuant to stipulation, denied all of those allegations.

"The cause was tried before a jury, which returned a verdict in favor of plaintiff in the amount of $35,000 against these appellants, the action having been dismissed as against the defendant Petty before trial, and as against the other individual defendants at the close of plaintiff's case.

"Defendants Oakland High School District and Board of Education of the City of Oakland (appellants herein) appeal from the judgment on the following grounds: 1. That the evidence is insufficient to sustain or justify the verdict in that (a) the evidence fails to show that the injury to plaintiff resulted from a dangerous or defective condition

of the buildings, grounds, works or property of the defendant high school district; (b) that the evidence fails to show that the Board of Education, the governing body of defendant high school district, or any other board, officer or person having authority to remedy the same, had notice or knowledge of the existence of any defective or dangerous condition of any buildings, grounds, works or property of said high school district. 2. Error of the court in denying defendants' motion for a new trial based upon (a) insufficiency of the evidence to justify the verdict, and (b) excessive damages appearing to have been given under the influence of passion and prejudice.

"Issues were framed and the case was apparently tried on the theory that recovery could be had only if plaintiff (respondent herein) brought himself within the provisions of the above-referred to statute of 1923.

"Over the subject of dangerous or defective condition of property there is little or no serious controversy. The equipment containing the gauge in question was undeniably dangerous and defective when placed to the use to which respondent put it with the full knowledge and consent and under the direction of the said Petty. The main controversy centers about the question of knowledge or notice.

"It is conceded that Petty did not have actual notice, but respondent contends, and the trial court held in denying the motion for a new trial, that he had knowledge of sufficient facts to warrant the legal conclusion that he had constructive notice. This question is a fairly close one, and while we are inclined to concur with the trial court in its conclusion thereon it is unnecessary for the purpose of this decision to pass squarely upon this point, for in the same year (1923) that the above-mentioned statute was enacted the state legislature just prior to such enactment amended section 1623 of the Political Code to read as follows:

" 'Boards of school trustees, high school boards, junior college boards and boards of education are liable as such in the name of the district for salary due any teacher on contract, and for all debts contracted under the provisions of this chapter, *and for any judgment against the district on account of injury to any pupil arising because of the negligence of the district or its officers or employees,* and they must pay any judgment for debts, liabilities or dam-

ages out of the school funds to the credit of such district, subject to the limitation on the use of said funds fixed in the Constitution of the state of California; provided, that the contracts mentioned in this section shall not be made in excess of the school moneys accruing to the district and usable for the purposes of such contracts during the school year for which the contracts are made, otherwise the district shall not be liable.'

"The words 'and for any judgment against the district on account of injury to any pupil arising because of the negligence of the district or its officers or employees' were added by the 1923 amendment. This language, it was held in the case of *Ahern* v. *Livermore Union Joint School Dist.*, 208 Cal. 770 [284 Pac. 1105], decided after the case at bar was tried, authorizes a recovery against a high school district for negligence without the necessity of the plaintiff meeting the requirements of the act of 1923 above quoted.

"Since the amended complaint states facts sufficient to constitute a good cause of action for general negligence irrespective of the allegations of knowledge or notice required by said act of 1923, and since the jury by its verdict impliedly found that all these facts are true (which findings are amply supported by the evidence), it follows that respondent has fully pleaded and proven his case. The allegations of knowledge or notice required under the terms of the 1923 statute become mere surplusage in so far as an action for general negligence is concerned."

In the petition herein for a hearing, appellants challenge the soundness of the construction which we placed upon said section 1623 of the Political Code, as amended in 1923, and upon cognate clauses and certain sections of the statutes, in our decision of the case of *Ahern* v. *Livermore High School Dist., supra.* Inasmuch as the construction which we there placed upon said section 1623 and cognate sections and provisions of the statutes germane to the subject was made after much deliberation, as will appear from the decision itself, and, in view of the further fact that the arguments offered as to the unsoundness of said decision have very recently pressed themselves upon our attention, notably in *Damgaard* v. *Oakland High School Dist., ante,* p. 316 [298 Pac. 983], we feel satisfied that a formal reconsideration of the applicability of said section 1623 of the Political Code

to the instant case would not result in a reversal of the construction we placed upon the respective code sections considered in the Ahern case.

 We now come to the consideration of the question earnestly urged by appellants, which is whether or not the damages as assessed herein are so far excessive and disproportionate to the injuries sustained by respondent, as measured by other awards judicially sanctioned in this and other states of the Union as fair compensation for like injuries, as to require reduction on the ground that they "appear to have been given under the influence of passion or prejudice". (Sec. 657, Code Civ. Proc., subd. 5.) It being impossible to restore a lost member of the body, the law undertakes to do the next best thing humanly possible, in lieu of restoration, which is to compensate the loss with a money consideration. Out of the long experiences of the past, in which all the elements and inconveniences of loss have been considered, weighed and appraised, a standard, not invariable, it is true, has been adopted by courts of law. The average amount for particular injuries, as fixed by the verdicts rendered by juries and approved by courts, has its place in arriving at the estimate. The compensation assessed in the instant case, compared with a long list of cases in which the loss of an eye was, as here, the single damage to be compensated, so greatly exceeds the amounts of award in the average cases as to justify the claim on the part of the school district and the officers that the verdict of the jury was the result of passion and prejudice. It is rather co-incidental that *Damgaard* v. *Oakland High School Dist., supra,* presents a case in point of injury very similar in all respects to the instant case, even to the loss of an eye, caused through an explosion which occurred during an experiment conducted in the chemistry department of the same high school district in which respondent herein was injured. The jury in that case assessed the damage at $15,000. Respondent, here, did not suffer any damages greater than was suffered by the Damgaard youth. There is nothing in either case that would seem to justify a preference of one over the other. Nevertheless, out of an abundance of caution, we have concluded that a judgment of $16,000 will be just in the circumstances of the case.

The judgment is modified by reducing the award from the sum of $35,000 to $16,000, and, as so modified, the judgment is affirmed. It is so ordered.

LANGDON, J., Dissenting.—I dissent. I am in accord with that part of the opinion upholding recovery of damages by the plaintiff, but I am unable to perceive any reasonable ground for the reduction of the award from $35,000 to $16,000. It appears that this modification of the judgment is primarily based upon the supposed similarity of the Damgaard case and the instant case. However, there is nothing in this record which points to any prejudice or passion on the part of the jury. The trial court, in which the discretion in this matter must be vested, so concluded in denying the motion for a new trial. This court has arbitrarily and as a result of considerations outside the record, determined that a certain sum is adequate compensation for the injury, in the face of a contrary determination by the jury and the trial court. I think that this is beyond its powers.