[Civ. No. 9482. First Appellate District, Division One.—December 19, 1935.]

BETTY GACKSTETTER, a Minor, etc., Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

714

Abbott, Cannon, Appel & Dains, Walter H. Linforth and William M. Cannon for Appellants.

Vincent W. Hallinan and William F. Herron for Respondent.

GRAY, J., *pro tem.*—On June 24, 1925, at about 3:30 P. M., respondent, then approximately four years of age, was struck by a street railway car owned by appellant Market Street Railway Company and then operated by its motorman, appellant L. McClelland, in an easterly direction on Hayes Street, between Divisadero and Broderick Streets, in the city and

county of San Francisco. On August 6, 1926, she, by her guardian *ad litem,* filed a complaint charging appellants with negligence in the operation of the street car and seeking to recover damages for the injuries which she suffered thereby. After trial, a jury, on July 27, 1933, returned its verdict in her favor for the sum of $14,000. Their motions for a new trial having been denied, appellants have appealed from the judgment entered on the verdict.

■ "It is an established principle that courts may take judicial knowledge of their own proceedings in the same case (*Hollenbach* v. *Schnabel,* 101 Cal. 312 [40 Am. St. Rep. 57, 35 Pac. 872]; *Sewell* v. *Price,* 164 Cal. 265 [128 Pac. 407])." (*People* v. *Clinton,* 78 Cal. App. 451, 453 [248 Pac. 929]; *Benton* v. *Industrial Acc. Com.,* 74 Cal. App. 411 [240 Pac. 1021].) "The record on a prior appeal in the same case in the same court is judicially noticed by the latter." (23 C. J. 111.) "An appellate court will take notice of its own records of its own motion or when properly suggested, as far as they pertain to the case before it for consideration; and in accordance with this rule it has been held that the appellate court will take judicial notice of the record on a former appeal in the same case. . . . " (4 C. J. 561; accord 15 R. C. L. 1113.) An application of this rule discloses the following facts. The present judgment is the result of a third trial of this action. In the first trial, held in June, 1927, the jury returned a verdict in respondent's favor for $5,000, but the judgment entered thereon was reversed by an opinion found in 104 Cal. App. 89 [285 Pac. 409]. A similar verdict was given by the jury in the second trial, occurring in May, 1931, and again the judgment was reversed. (130 Cal. App. 316 [20 Pac. (2d) 93].) In the three trials respondent contended that when struck, she was running from the north to the south side of Hayes Street; that the motorman was negligent in not observing her and stopping his street car before it struck her and also in operating the street car at a speed excessive under the circumstances and beyond the limit fixed by ordinance. In the last trial she added an additional claim that the motorman was intoxicated. Police Officer McDonald, called by the respondent, was the only witness who testified at the first and second trials as to the car's excessive speed but, as stated in both opinions, such testimony was worthless because of his lack of knowledge. On the third trial, respondent did not

question this officer as to speed. The officer, however, on all trials testified as to the positions of the street car and child after the accident and as to a conversation with the motorman immediately after the collision in which, when he asked from where the child had come, the latter pointed to the north. Mrs. Blass, a witness for respondent, was unable, due to loss of memory, to reiterate, at the third trial, her testimony, given at the former trials, that respondent ran from the north to the south side of Hayes Street as the street car left Broderick Street and that the left corner of the car's fender struck the child, throwing her to its right onto a rock pile, from which she rolled under the car.

On the third trial, respondent sought to supply the deficiency created by the failure of Mrs. Blass to testify at all and of the police officer to testify as to speed by the testimony of two new witnesses—N. C. Nicklassen and William K. Donnell. She also produced a third witness—Phoebe Lambert—to establish the motorman's intoxication. The judgment in so far as negligence is concerned rests for its support upon their testimony, without which it cannot stand. Hence appellants, to destroy such support, attacks their credibility, because of their belated appearance in the case, under suspicious circumstances, and because they are contradicted by other evidence. The following excerpt from the case of *Fox* v. *Oakland Con. St. Ry.*, 118 Cal. 55, 60 [50 Pac. 25, 62 Am. St. Rep. 216], addressed to a similar attack, is so apt an answer to appellants' argument as to warrant its repetition. ''Appellant devotes a considerable portion of its brief in an effort to convince us that the evidence fails to show any negligence on the part of defendant. The task has proven fruitless. An examination of the evidence discloses a substantial conflict upon that issue, however much it may be said to preponderate in defendant's favor. Much of counsel's argument in this behalf is expended in endeavoring to demonstrate that the two witnesses whose testimony tends to create the conflict were wholly unworthy of credence, and that therefore the evidence, while apparently conflicting, is not so in substance. But the credibility of witnesses is a question for the jury, so long as the testimony which they give has a legal tendency to establish the fact, and where, as here, there is nothing so inherently or otherwise manifestly improbable in its character as to justify the court in ignoring it.'' ■ The amount of credit

to be given to the positive testimony of any witness is solely a question for the trial court, except perhaps where the testimony in the light of the undisputed facts is inherently so improbable and impossible of belief as in effect to constitute no evidence at all. (*De Arellanes* v. *Arellanes,* 151 Cal. 443 [90 Pac. 1059].) The reviewing power of an appellate court is limited by the declaration found in section 1847 of the Code of Civil Procedure, that the jury are the exclusive judges of the credibility of a witness, except where the record demonstrates that in the very nature of things certain testimony of a witness cannot be true. (*Badover* v. *Guaranty Trust etc. Bank,* 186 Cal. 775 [200 Pac. 638].) "Where such conflict exists it is for the jury to judge the credibility of the witnesses, and the weight, effect, and probative force to be given their testimony (*Hanton* v. *Pacific Electric Ry. Co.,* 178 Cal. 616 [174 Pac. 61])', the duty of the reviewing court on appeal being to construe the evidence so as to support the verdict, if it may be done so reasonably; that is to say, to accept as true such evidence as tending to sustain the verdict, unless it be inherently incredible, and to reject as untrue those portions which conflict therewith. (*Neher* v. *Kauffman,* 197 Cal. 674 [242 Pac. 713].) " (*Truitner* v. *Knight,* 83 Cal. App. 655, 661 [257 Pac. 447].)

In explanation of her failure to testify in the first and second trials, Phoebe Lambert testified that although respondent's attorney had represented her in a divorce action against her former husband, the motorman McClelland, and that the same was tried in the same month as the first trial of this case, his employment commenced after such first trial; that she was out of town at the time of the second trial; and that she first learned of this case on March 4, 1932, from reading a newspaper account of the reversal of the second judgment. As to the manner in which he became a witness in the third trial, William K. Donnell stated that, although he resided, during the month of the accident at an address which other evidence showed to be a flat adjoining that where respondent then lived, he had never advised her family in any manner as to his knowledge of the facts of the accident; that one morning about two or three months before the third trial, he had read a press account of the reversal of the second judgment because of prejudicial remarks of respondent's counsel; that later in the same day he had met an attorney of eight or ten

years' acquaintance, whom he knew to be associated with respondent's attorney, without appointment in the vicinity of the city hall; and that he had then told such attorney what he had observed as to the happening of the accident. N. C. Nicklassen swore that he had told what he had observed of the accident to a carpenter working on the same apartment house in which he also was working, immediately after the accident and to the owner of the apartment house the same day. In this he was corroborated by their testimony. He further testified that a law clerk, employed by respondent's attorney, came to his home about six weeks before the third trial and that, upon his inquiry, he had told such law clerk what he knew of the accident; that he had met respondent's attorney twice, once at the law clerk's home two weeks before this trial, but had refused to discuss the case with him. Whether the testimony of these witnesses was false or not was a question exclusively for the determination of the jury, whose determination is conclusive on appeal. (*McFarland* v. *Matthai*, 7 Cal. App. 599 [95 Pac. 179].) Even if full force is given to appellants' argument that the above circumstances, under which these three witnesses appeared at the third trial, are sufficient to generate a suspicion that their testimony was fabricated, still it cannot be justly said those circumstances render their testimony inherently improbable. It was for the jury to consider these circumstances and determine whether they were of such force and consequence as to destroy the verity of their testimony and their acceptance of such testimony is conclusive upon this court. (*Hironymous* v. *Hiatt*, 52 Cal. App. 727 [199 Pac. 850].)

■ Phoebe Lambert further testified that she married motorman McClelland in 1917 or 1918 and divorced him in June, 1927; that she was living with him in June, 1925; that on the day of the accident when he came home for lunch somewhere between 12 M. and 2 P. M., he was very intoxicated, staggered some and smelled of liquor, but when he returned home between 5 P. M. and 6 P. M. he was partially sobered up; that, when employed, she did not return home at lunch time. She was contradicted by the following evidence. The records of a steamship company showed that she was employed by it during the time she claimed to have prepared his lunch. The street railway company's records disclosed that on the day of the accident, motorman McClelland started work at 5:21

A. M., was relieved at 10:07 A. M., returned to work at 11:42 A. M. and finished work at 5:43 P. M., making eleven round trips for the day, of which two were after the accident. The motorman who relieved him at 10:07 A. M., the motorman whom he relieved at 11:42 A. M., his conductor on the eleven trips and police officer McDonald, who conversed with him immediately after the accident, each testified that he was not intoxicated at the respective times each observed him. Although the route traveled by his street car was through an area of heavily congested traffic, nothing unusual, except this accident, occurred on any of the eleven round trips. According to William K. Donnell, as he was walking on the north side of Hayes Street westerly from Divisadero Street towards Broderick Street, he saw an eastbound street car, crossing Broderick Street at a speed of between 30 and 35 miles per hour and respondent in the middle of the westbound tracks, running towards the south side of Hayes Street; the motorman rang his bell, but did not decrease his speed; the fender struck respondent, throwing her southerly onto a sand pile and then stopped within 12 feet. N. C. Nicklassen testified that, on the day of the accident, he was working, as an electrical contractor, in an apartment house then being constructed on the south side of Hayes Street between Divisadero and Broderick Streets; that, as he was standing in a bay window of the apartment house he saw respondent start to cross Hayes Street from its north side and immediately thereafter the street car about 25 feet east of Broderick Street coming towards Divisadero Street at a speed of 30 to 35 miles per hour; that, when he first saw her, respondent was running between the curb and the westbound tracks and then standing, facing south; that he then looked away, but, upon hearing the clanging of the bell and the application of brakes, he paid attention and saw the child standing, confused and throwing her hands up; and that the fender of the car hit her, her legs were thrown under the fender, then she was thrown in front of the car and then rolled under the car.

Appellants introduced evidence which contradicted in detail the testimony given by these last two witnesses. The motorman testified that he had stopped at Broderick Street and intended to stop at Divisadero Street; that, after leaving Broderick Street, his speed never exceeded 7 or 8 miles an hour; that he first saw respondent when she was standing

close to the sand pile in front of the apartment house, not far from the curb and about 60 or 65 feet in front of his car; that when the front of the car was about 20 feet away from her, she ran in a northwesterly direction, towards the car; that instantly he sounded the gong and reversed the current, making the quickest possible emergency stop; and that, when stopped, the car's front was 20 feet past the point where she started to run and her body was against the brake-shoe, which was 12 feet back of the fender. He was corroborated by a passenger and the conductor as to the speed, emergency stop and the position of the child and car, where the latter had stopped. A subsequent test showed that, at this place, a car going at 8 miles per hour could make an emergency stop within 25 feet and at 15 miles per hour within 60 feet. Appellants assert that the credibility of Phoebe Lambert was destroyed by her inability to recall the exact time of her husband's return for lunch; of Nicklassen by his vague memories of previous interviews by respondent's attorney, and of Nicklassen and Donnell by their lack of sympathetic interest in the child after injury, and by their assurance, in describing events eight years old without contemporaneous memoranda or other aid to refresh their memories. Such matters were proper tests to be applied by the jury as the exclusive judges of their credibility. (Code Civ. Proc., sec. 1847.) Appellants further argue that the testimony of Phoebe Lambert, as to the motorman's intoxication, and of Nicklassen and of Donnell, as to facts of the accident, was impeached by contradictory testimony of eye-witnesses, produced by them. Where there arises a substantial conflict in the evidence which is not inherently improbable and which is capable of supporting a finding either way, the determination by the jury or trial court of the effect of such evidence is final and conclusive and not open to review. (*Weaver* v. *Carter*, 28 Cal. App. 241 [152 Pac. 323].) Conceding, as appellants have pointed out in their briefs, that there are self-contradictions in the testimony of Nicklassen and Donnell and that the testimony of each conflicts with that of the other, as to the position and actions of the child immediately before the collision, it was nevertheless the duty of the jury to reconcile such contradictions and its finding made thereon cannot be reviewed. (*Parker* v. *Herndon,* 19 Cal. App. 451 [126 Pac. 183]; *Pedrow* v. *Federoff,* 77 Cal. App. 164 [247 Pac. 212].)

■ Appellants argue that their motions for a new trial on the ground of newly discovered evidence showing that the witness Donnell was in Pocatello, Idaho, on June 24, 1925 (the day of the accident), should have been granted. Such motions were supported by the affidavits of five residents of that city that each had frequently seen him in that city during the months of June, July and August, 1925. Another affiant stated that he had frequently seen such witness in that city during the months of May and June, 1925. The fact that Donnell was seen frequently in Pocatello on unspecified days in the month of June did not establish that he was not in San Francisco on the day of the accident. However, the physical impossibility of Donnell's presence in San Francisco on the day of the accident was shown by two additional affidavits, which respectively stated that he was in Pocatello during the entire month of June, 1925, and during the third week of that month. The counteraffidavit of Donnell denied that he was in Idaho at any time during the year 1925. His mother also deposed that he was residing with her during June, 1925, at the address given by him in his testimony. Since the only effect of the newly discovered evidence was to impeach Donnell, the motion for a new trial was properly denied. (*Hanton* v. *Pacific Electric Ry. Co.*, 178 Cal. 616 [174 Pac. 61].) The destruction, by this new evidence, of Donnell's credibility would not cause a different verdict, for the testimony of the other eye-witness — Nicklassen — sufficiently established the same facts of negligence. ■ A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, which must be presumed to have been properly exercised in denying the same, unless it appears that the evidence is such as must, if proved upon a new trial, change the result, in which case, if proper diligence is shown, the order must be reversed; but when it cannot be held that the result would probably be different if the new evidence were received, the discretion of the court cannot be interfered with. (*Miller* v. *Scoble*, 8 Cal. App. 344 [97 Pac. 93].)

■ Appellants claim that the trial court erred in denying their motions for a new trial upon the ground of a juror's misconduct in concealing his acquaintance with respondent's attorney and the latter's associate. It is undisputed that, although respondent's attorney had previously announced to

the entire panel his name and that of his associate, this juror, in answer to questions asked by the court collectively of all prospective jurors and by appellants' attorney individually of him, denied he knew either. It also appears, without conflict, that this juror had served, within a month of the present trial, in another case which was tried on behalf of the plaintiff, mainly by such associate, but with some participation by respondent's attorney and in which such juror returned a verdict for plantiff. Appellants' attorney, in his affidavit, states that if he had known these facts and had not been misled, he would have exercised a remaining peremptory challenge. The poll of the jury shows that this juror was one of the nine which returned the verdict. The conduct of the juror in giving false answers to the questions constituted misconduct or irregularity on his part sufficient to warrant the granting of a new trial therefor. (*Sherwin* v. *Southern Pacific Co.*, 168 Cal. 722 [145 Pac. 92].) But the denial of a new trial was warranted because of these additional facts. The affidavits of the juror, the associate and Joseph F. Leonard all agree that, during the course of the present trial, the juror spoke to the associate in a manner which showed he knew him. The associate's affidavit stated that, on the second day of the trial while he was talking in the corridor during recess to Joseph F. Leonard, who was one of appellants' attorneys and sat with their attorney of record throughout the trial, the juror in passing, greeted him in a friendly manner and that, upon Leonard's inquiry he had advised him that this juror had served in the previous case. Leonard's affidavit denied that he was one of appellants' attorneys and that the associate had informed him of the juror's service in the other case. The trial court was entitled to accept either version. If Leonard knew of the juror's service in the previous case, such knowledge is imputed to appellants. (1 Cal. Jur. 846.) "If the defendant or its attorney had discovered these facts at any time during the trial it would have been their duty, if they desired to take advantage thereof, to apply to the court for leave to reopen the examination of the jurors, elicit the facts, and thereupon offer a challenge to the juror guilty of the misconduct." (*Sherwin* v. *Southern Pacific Co.*, supra, at p. 726.)

Appellants contend that their motions for a new trial upon the ground of excessive damages, appearing to have been

given under the influence of passion or prejudice, should have been granted. In passing upon this question, attention will be given only to the testimony most favorable to respondent, which was that given by her attending physician, and the contradictory testimony of appellants' experts ignored. This attending physician gave substantially the same testimony in each of the three trials except that the actual condition at the third trial—eight years after the accident—showed a much better result than that he had anticipated at the former trials. Each of the first two verdicts was for $5,000, but the third awarded $14,000. In *Grant* v. *Los Angeles Transfer Co.*, 45 Cal. App. 731 [188 Pac. 294], a verdict was held not excessive because it was for the same amount as was awarded on two previous trials. In *Maede* v. *Oakland High School Dist.*, 212 Cal. 419 [298 Pac. 987], the Supreme Court concluded that a verdict was excessive because it greatly exceeded an award for similar injuries in a case recently before it. In reducing an award, the court, in *Alabama Power Co.* v. *Goodwin*, 214 Ala. 15 [106 So. 239, 242], said: "There had been two trials on practically the same evidence as to the extent of plaintiff's injuries and damage, and there was a large discrepancy between the two awards of damages by the respective juries. (*Central of Ga. Ry. Co.* v. *White,* 175 Ala. 60, 63 [56 So. 574].) This is a pertinent fact to be considered on the motion." The fact that the verdict on the previous trial was for a greatly lesser amount, persuaded the court in *Tunnel Mining & L. Co.* v. *Cooper,* 50 Colo. 390 [115 Pac. 901, Ann. Cas. 1912C, 504, 39 L. R. A. (N. S.) 1064], to hold an award to be excessive. The present award for approximately three times the amount given in the first two trials is clearly excessive.

If the recovery is so grossly disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice or corruption, rather than honest and sober judgment, the motion should have been granted. (8 Cal. Jur. 834.) The only means of discovering the existence of passion and prejudice as influencing a verdict is by comparing the amount of the verdict with the evidence before the trial court. (*Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237 [116 Pac. 513].) Her physician described her injuries as an oblique, spiral fracture of the middle of the right

femur and a laceration of the right calf exposing the bone, with loss of skin, one-half the size of a hand, some muscle and tissue and with considerable damage to the remainder. In treating the injury he elevated the leg in a Hogden splint with traction and cradled the raw wound to relieve pressure and give access for dressing. Respondent remained in this painful position for six weeks until the leg healed, during which time the physician daily dressed the wound. He continued to dress the wound for another month thereafter. Unquestionably, respondent suffered severe pain as a result of the injury and during the period of its healing. At the time of the third trial the fracture had completely healed with good union, but with a slight anterior bowing and shortening of the leg to the extent of three-eighths of an inch. The wound on the calf had healed, leaving permanent, irremovable scars and adhesions to the muscles which did not limit ordinary use but would prevent her from dancing, walking long distances or engaging in athletic sports. She limped for two years after the accident, but thereafter walked normally.

A comparison of the injuries suffered with the amount awarded shows that the latter is grossly excessive. Therefore, in conformity with the procedure followed in the cases of *Livesey* v. *Stock,* 208 Cal. 315 [281 Pac. 70], and cases cited therein, *Slaughter* v. *Van Winkle,* 213 Cal. 573 [2 Pac. (2d) 789], and *Shaffer* v. *Arnaelsteen,* 54 Cal. App. 719 [202 Pac. 946], it is ordered that the judgment herein be and the same is hereby reversed and the cause remanded for a new trial unless within thirty days from the filing of the *remittitur* in the trial court plaintiff shall remit from the judgment all except the sum of $5,000 and the costs taxed therein. If such remission be so made, then the judgment shall stand affirmed, and plaintiff shall recover her costs of appeal.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 18, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 17, 1936.